UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF PENNSYLVANIA
HARRISBURG DIVISION

In re:	Case No. 24-_____
Wendt Communication Partners, LLC	Small Business Case
Debtor	Chapter 11 – Subchapter V

## DECLARATION OF W. DOUGLAS WENDT IN SUPPORT OF CHAPTER 11 FILING

W. Douglas Wendt, under penalty of perjury hereby declares:

1. I am a 100% owner and chief executive officer of Wendt Communication Partners, LLC, debtor and debtor in possession in the above captioned proceedings ("WCP" or "the company"). I am familiar with and have personal knowledge of the day-to-day operations, affairs, and the books and records of the company.

2. On October 1, 2024, (the "petition date"), WCP filed a petition for relief under chapter 11 of title 11 of the United States Bankruptcy Code (the "Code") with the United States Bankruptcy Court for the Middle District of Pennsylvania.

3. To enable the company to minimize the adverse effects that the commencement of the chapter 11 case could have on WCP's business and its customers, the company intends to request various types of relief through a number of applications and motions (collectively the "First-Day Motions"). The First-Day Motions seek relief intended to, among other things, stabilize the company's finances, maintain customer and employee loyalty, and engender vendor and supplier confidence. The emergency filing and the First-Day Motions are necessary to operate the business and crucial to the company's reorganization efforts.

4. I submit this Declaration in support of the Chapter 11 filing and the forthcoming First-Day Motions. All facts set forth in this Declaration are based on my personal knowledge, upon information or advise provided to me by others, upon my review of information, and documents, and/or in my opinion based upon my experience and knowledge of the industry within which the company operates, the company's history and day-today operations, and WCP's current financial condition.

5. If were called upon to testify, I could and would testify competently to the facts set forth herein. I nevertheless reserve the right to amend the statements made in this declaration if I become aware of additional facts that would make any of the statements made herein incomplete or inaccurate.

6. I am duly authorized to submit this Declaration.

1

**Background.**

7.   Wendt Communication Partners LLC is a privately held Limited Liability Company organized under the laws of the Commonwealth of Pennsylvania. The company's address is located at 5000 Ritter Road, Suite 202, Mechanicsburg, PA 17055. The company was founded by my wife, Alice Wendt and myself. Although Alice was never an officer or owner, together we managed the day-to-day affairs of the company until her death in 2018.

8.   WCP began servicing customers on January 2, 2007. Initially, the company offered a range of marketing, advertising and public relations services to its clients. Over time, the company narrowed its focus to the configuration, implementation of an industry-leading marketing automation and customer relationship management suite, (the "CRM").

9.   Annual revenues grew from about $70,000.00 in 2018 to a peak of $2,979,814 in 2023. Revenues had declined considerably from 2016 to 2018 when Alice became terminally ill. Alice passed in the spring of 2018, leaving myself and two daughters as her survivors.

10.   At around that time, I moved to New York with one of my daughters, and after recovering from my wife's passing, the company committed itself to becoming certified as value-added reseller (VAR) operating in the eco-system of a fast growing publicly traded marketing automation and CRM company (the "Vendor.").

11.   Presently, the majority of company revenues are derived from implementing the CRM and training customers in the use of the CRM under project based or ongoing service contracts. The company also offers content creation and marketing services to existing clients only.

12.   About 35% of total revenues are sourced from commissions paid by the Vendor and clients referred to the company by the Vendor (the "Vendor Referrals"). The remainder of the income is sourced through direct sales to new customers and existing customers, and client referrals.

*WCP Expansion.*

13.   The company expanded its capacity and supported its growth through a variety of financing activities, including revolving credit, business loans, lines of credit, and loans from merchant cash advance companies ("MCAs"). The funds were used strategically to grow the company's visibility, and to support the expansion of the company's capacity to service larger clients.

14.   In many respects, the growth strategy was initiated at the recommendation of the Vendor's leadership team who intimated that it intended to aggressively pursue larger enterprise level clients. Leadership suggested that partners desiring to contract with such enterprise clients would be required to maintain certain accreditation(s) and adhere to complex and IT security and data protocols, all of which required significant investments.

15.   The company was also selected to assist the Vendor in high-level sales presentations to customers that required complex implementations. The collaboration resulted in a high rate of deal closings that benefited both the company and the Vendor.

16.     I was under the impression and was led to believe that the larger enterprise client deals would become more frequent in 2024. In anticipation of the expected growth, the company also retained outside fractional professional services, including a Chief Financial Officer (CFO) a Chief People Officer (CPO); and a fractional Chief Revenue Officer (CRO), each of whom were hired for the years of experience that they purportedly had in the technology industry.

17.     The company expanded the staff and has maintained high levels of payroll for the first seven to eight months of 2024 in anticipation of deals that ultimately never materialized.

**Events Leading to Bankruptcy**

18.     Starting in early 2024, the close rate on enterprise client deals plummeted dramatically due to overall economic conditions and stiff price competition in the marketplace. Without notice to its VARs, the Vendor shifted its priorities away from enterprise clients to a monthly recurring revenue model that is more suited for smaller implementations (the "MRR Model"). VARs were required to meet certain volume thresholds to benefit from partner referrals from the Vendor.

19.     The company was unable to shift its operations to meet the new MRR Model thresholds. The new model effectively locked the company out of 30 to 40% of its revenue streams. WCP also lost the benefits of being a top-tier VAR in the Vendor's ecosystem. As a result, Vendor Referrals dropped 50% from the prior year. Overall sales declined rapidly, and the company lost its ability to secure larger contracts.

20.     I was focused on generating sales and managing the newly expanded operation, and I did not realize that debt service had become a larger and larger portion of the company expenses. Nor was I informed by my team of professionals that the company payroll and overhead expenses were unsustainable until the situation became dire early in the summer of 2024.

21.     By July 2024, I began cutting expenses by laying off full-time employees, reducing the high cost North American contractors, and reducing the company overhead as much as possible. By August 2024, the company reduced its monthly expenses by about 60%, slashing monthly operating expenses from $200,000.00 per month to under $100,000 – all without losing a single client and without any direct risks to the company's operating abilities or overall reputation.

22.     As of the date of this writing, I am the only employee on the company payroll. The company contracts labor with various virtual staffing agencies to deliver services to its clients. Currently, the company maintains a compliment of about 21 lower cost virtual assistants that work out of Mexico, Columbia, South Africa, the Philippines, and India (Collectively the "VAs"). VAs take care of all general and administrative, client onboarding, support and account management and bookkeeping duties. I, along with one VA, am in charge of sales. Marketing is outsourced to a third-party lead-generation company.

23.     Despite my best efforts, the cuts were not enough to recover form the losses incurred in the early part of the year, and the company is still experiencing a cash flow crisis. The company can no longer afford to maintain its debt service.

24. In early September, I reached out to Dennery, PLLC to explore the company's options. Over the next few weeks, the company fell behind on payments to the company lenders. After much consideration, the decision was made for file for bankruptcy protection.

25. I have been working closely with bankruptcy counsel to prepare for the filing of the chapter 11 case. However, before the bankruptcy filings were complete, I was notified by one of my creditors that it intended to enforce its rights to payment by seizing the company's receivables accounts directly from my customers.

26. Based on my experience working within the Vendor eco-system and my participation in the close community of VARs, I knew that any attempts at seizing customer accounts would result in irreparable harm to the WCP's business reputation, an immediate loss of customers and accounts, and possibly the termination of the contract with the Vendor – any one of which would be fatal for the company.

27. Based on the circumstances, the company has no choice but to file an emergency petition for protection under chapter 11.

28. The purpose for filing the emergency chapter 11 case is to protect the company and its customers from creditors and their collection efforts. Ultimately, the company needs the protection that the chapter 11 will provide to stabilize the company's finances, to further reorganize the revenue and cost structure, and ultimately to repay debts in amounts and at a rate that it can sustain.

**FURTHER THE DECLARANT SAYETH NAUGHT**

EXECUTED

W. Douglas Wendt (Oct 1, 2024 09:20 EDT)
W. Douglas Wendt
Corporate Representative
Wendt Communication Partners, LLC
DATED: 10/02/2024

# 1ST DAY AFFIDAVIT

Final Audit Report                                         2024-10-01

| | |
|---|---|
| Created: | 2024-10-01 |
| By: | J. Christian Dennery (jcdennery@dennerypllc.com) |
| Status: | Signed |
| Transaction ID: | CBJCHBCAABAAIq9gYdUWQQZkeo7bygh0gUAPOCiSnnAq |

## "1ST DAY AFFIDAVIT" History

- Document created by J. Christian Dennery (jcdennery@dennerypllc.com)
  2024-10-01 - 1:18:10 PM GMT

- Document emailed to W. Douglas Wendt (doug@wendtpartners.com) for signature
  2024-10-01 - 1:18:15 PM GMT

- Email viewed by W. Douglas Wendt (doug@wendtpartners.com)
  2024-10-01 - 1:18:24 PM GMT

- Document e-signed by W. Douglas Wendt (doug@wendtpartners.com)
  Signature Date: 2024-10-01 - 1:20:45 PM GMT - Time Source: server

- Agreement completed.
  2024-10-01 - 1:20:45 PM GMT

Adobe Acrobat Sign