## UNITED STATES BANKRUPTCY COURT
## MIDDLE DISTRICT OF PENNSYLVANIA
## HARRISBURG DIVISION

|  |  |  |
|---|---|---|
| In re | : | Case No. 24-02511 |
| Wendt Communication Partners, | : | Chapter 11– Subchapter V |
| LLC | : |  |
| Debtor | : | Hon. Henry W. Van Eck |
|  |  | United States Bankruptcy Judge |

## CERTIFICATION REGARDING
## AMENDED PLAN OF REORGANIZATION

The undersigned counsel for the plan proponent in the above-captioned case, hereby certifies that the Amended Plan of Reorganization, filed on January 6, 2025, contains changes to the Plan of Reorganization, filed on December 30, 2024, of such nature and degree that:

<u>X</u>     notice must be circulated as if an original Plan of Reorganization;

__     notice need be sent only to the objectors to the last filed Plan of Reorganization;

__     no further notice is required and the Amended Plan of Reorganization can be confirmed as submitted. All pending objections to confirmation of the Plan of Reorganization have been resolved or settled by the modifications included in the Amended Plan of Reorganization, and the Amended Plan of Reorganization complies with the requirements of 11 U.S.C. § 1123 and § 1129.

Attached hereto as <u>Exhibit A</u> is a redline of the written portion of the plan filed on December 30, 2024, which highlights the changes made in the Amended Plan dated January 6, 2025.

Certified by:

*/s/ J. Christian Dennery*
J. Christian Dennery, Esq.
Dennery, PLLC
7310 Turfway Rd. Suite 550
Florence, KY 41042
859-692-3685
jcdennery@dennerypllc.com
*Counsel for Debtor*
*Date: January 6, 2025*

# UNITED STATES BANKRUPTCY COURT
## MIDDLE DISTRICT OF KENTUCKY
## HARRISBURG DIVISION

| | | |
|---|---|---|
| In re | ) | Case No. 24-02511 |
| Wendt Communication Partners, LLC | ) | Chapter 11 Subchapter V |
| Debtor | ) | |
| | ) | Hon. Henry W. Van Eck |
| | ) | United States Bankruptcy Judge |

## WENDT COMMUNINCATION PARTNERS, LLC's
## AMENDED CHAPTER 11 SUBHCAPTER V PLAN OF REORGANIZATION AND NOTICE OF INJUNCTION (Fed. R. Bankr. P. 2002(c)(3))
### Dated: December 30, 2024 January 6, 2025

Wendt Communication Partners, LLC ("Debtor, "debtor in possession," "the reorganized debtor," "WCP, or "the "company"), by and through counsel, and pursuant to 11 U.S.C. §§1189 and 1193, hereby submits its Chapter 11 Subchapter V Plan of Reorganization (the "Plan").

**PLEASE TAKE NOTICE:** Your rights may be affected by the terms and conditions set forth in the Plan. You should read this Plan carefully and discuss it with your attorney. If you do not have an attorney, you may wish to consult one. Electronic copies of the Plan are available upon request or can be accessed from the pacer.gov website.

**PLEASE TAKE NOTICE:** This Plan provides for an injunction against conduct that is not otherwise enjoined under the Bankruptcy Code. The nature of the injunction and the entities that are subject to the injunction are set forth in Article 6, Section 6.07 below Section 6.07 below.

*/s/ J. Christian A. Dennery*
J. Christian A. Dennery, Esq. (KBA 95878)
Dennery, PLLC
7310 Turfway Rd, Suite 550
Florence, KY 41042
Ph 859-692-3685
Fx 859-286-6726
jcdennery@dennerypllc.com
Attorney for Debtor and Debtor in Possession
Admitted Pro Hac Vice

# TABLE OF CONTENTS

Article 1.    Plan Summary. ....................................................................................................... 1

    Section 1.01    Creditor Prospectus and Liquidation Analysis. ........................................... 1

    Section 1.02    Wendt Communication Partners, LLC. ...................................................... 1

    Section 1.03    Business History. ........................................................................................ 2

    Section 1.04    Events Leading to Bankruptcy .................................................................. 3

    Section 1.05    Business Assets; and Proposed Sale. ......................................................... 3

    Section 1.06    Summary of Classification. ........................................................................ 4

    Section 1.07    Plan Implementation. ................................................................................. 4

    Section 1.08    Disbursements and Distributions. .............................................................. 4

    Section 1.09    Requirements of Confirmation. .................................................................. 4

    Section 1.10    Voting. ........................................................................................................ 4

Article 2.    Claims. ................................................................................................................... 5

    Section 2.01    Allowed Claims. ......................................................................................... 5

    Section 2.02    Objections to Claims. ................................................................................. 5

    Section 2.03    Disputed, Contingent, and Unliquidated Claims. ...................................... 5

    Section 2.04    Claim Estimates. ........................................................................................ 5

    Section 2.05    Bar Date. ..................................................................................................... 6

Article 3.    Unclassified Claims; Priority Taxes and Administrative Claims. ................... 6

    Section 3.01    Priority Tax Claims. ................................................................................... 6

    Section 3.02    Administrative Claims. ............................................................................... 6

Article 4.    Classified Claims – Classification and Treatment. ........................................... 7

    Section 4.01    Class 1 – Administrative Convenience Classes ......................................... 7

    Section 4.02    Class 2 – Secured Creditor Classes. .......................................................... 8

    Section 4.03    Class 3 – Contingent Claims Against Future Receivables. ...................... 10

    Section 4.04    Class 4 – Unperfected secured claims. .................................................... 12

    Section 4.05    General Unsecured Claims. ...................................................................... 12

    Section 4.06    Insider Claim. ........................................................................................... 12

Article 5.    Plan Disbursements And Distributions .......................................................... 12

    Section 5.01    The Disbursement Fund. .......................................................................... 12

    Section 5.02    Appointment of Disbursement Agent. ..................................................... 13

    Section 5.03    Class 2 Deposits and Payments. ............................................................... 13

    Section 5.04    Disposable Income, Disbursements, and Distributions. ......................... 14

Article 6.    Implementation .................................................................................................. 16

    Section 6.01    Wendt Communication Partners, LLC; Management. ............................. 16

Section 6.02    The Liquidating Plan. ................................................................... 16

Section 6.03    Plan Projections; Sources and Uses. ................................................ 17

Section 6.04    The Effective Date. ..................................................................... 18

Section 6.05    Plan Duration; Term. .................................................................. 18

Section 6.06    Vesting of Property of the Estate; Causes of Action. ........................... 18

Section 6.07    Post Confirmation Injunction; § 1191(a). ........................................ 19

Section 6.08    Assumption and Rejection of Executory Contracts. ............................ 20

Section 6.09    Discharge. ................................................................................ 20

Article 7.    Feasibility and Liquidation Analysis ...................................................... 20

Section 7.01    Feasibility and Contingencies. ...................................................... 20

Section 7.02    Liquidation. .............................................................................. 20

Article 8.    Defaults; Opportunity to Cure; Appropriate Remedies. ........................... 20

Section 8.01    Default Notice. .......................................................................... 20

Section 8.02    Opportunity to Cure. ................................................................... 21

Section 8.03    Treatment of Uncured Default of Plan. ........................................... 21

Section 8.04    Conversion to Chapter 7. ............................................................. 21

Article 9.    Voting. ......................................................................................... 21

Section 9.01    Impairment under §1124. ............................................................ 21

Section 9.02    Classes impaired under the Plan. ................................................... 21

Section 9.03    Not voting. ............................................................................... 22

Article 10.    General Provisions and Disclaimers. ................................................... 22

Section 10.01    Disclaimers. ............................................................................ 22

Section 10.02    Definitions and Rules of Construction. ........................................... 22

Section 10.03    Captions. ................................................................................ 23

Section 10.04    Severability. ............................................................................ 23

Section 10.05    Binding Effect. ......................................................................... 23

Section 10.06    Controlling Effect. ..................................................................... 23

Article 1.    Plan Summary. ............................................................................... 1

Section 1.01    Creditor Prospectus and Liquidation Analysis. ................................. 1

Section 1.02    Wendt Communication Partners, LLC ............................................ 1

Section 1.03    Business History. ....................................................................... 2

Section 1.04    Events Leading to Bankruptcy ...................................................... 3

Section 1.05    Business Assets; and Proposed Sale. .............................................. 3

Section 1.06    Summary of Classification. ........................................................... 4

Section 1.07    Plan Implementation. .................................................................. 4

Section 1.08   Disbursements and Distributions. .................................................... 4

Section 1.09   Requirements of Confirmation. ....................................................... 4

Section 1.10   Voting. ................................................................................................ 4

**Article 2.   Claims.** ................................................................................................. 5

Section 2.01   Allowed Claims. ............................................................................... 5

Section 2.02   Objections to Claims. ...................................................................... 5

Section 2.03   Disputed, Contingent, and Unliquidated Claims. .......................... 5

Section 2.04   Claim Estimates. .............................................................................. 5

Section 2.05   Bar Date. ........................................................................................... 6

**Article 3.   Unclassified Claims; Priority Taxes and Administrative Claims.** .................. 6

Section 3.01   Priority Tax Claims. ......................................................................... 6

Section 3.02   Administrative Claims. .................................................................... 6

**Article 4.   Classified Claims – Classification and Treatment.** .............................. 7

Section 4.01   Class 1 – Administrative Convenience Classes ............................. 7

Section 4.02   Class 2 – Secured Creditor Classes. ............................................... 8

Section 4.03   Class 3 – Contingent Claims Against Future Receivables. ........... 10

Section 4.04   General Unsecured Claims. ............................................................ 12

Section 4.05   Insider Claim. ................................................................................. 13

**Article 5.   Plan Disbursements And Distributions** ............................................ 13

Section 5.01   The Disbursement Fund. ................................................................ 13

Section 5.02   Appointment of Disbursement Agent. ........................................... 13

Section 5.03   Class 2 Deposits and Payments. .................................................... 14

Section 5.04   Disposable Income, Disbursements, and Distributions. ................ 14

**Article 6.   Implementation.** ............................................................................... 16

Section 6.01   Wendt Communication Partners, LLC; Management. .................. 16

Section 6.02   The Liquidating Plan. ..................................................................... 17

Section 6.03   Plan Projections; Sources and Uses. ............................................. 18

Section 6.04   The Effective Date. ........................................................................ 19

Section 6.05   Plan Duration; Term. ...................................................................... 19

Section 6.06   Vesting of Property of the Estate; Causes of Action. .................... 19

Section 6.07   Post Confirmation Injunction; § 1191(a). ..................................... 20

Section 6.08   Assumption and Rejection of Executory Contracts. ..................... 20

Section 6.09   Discharge. ....................................................................................... 20

**Article 7.   Feasibility and Liquidation Analysis** .............................................. 20

Section 7.01   Feasibility and Contingencies. ...................................................... 20

Section 7.02   Liquidation. ........................................................................................... 21

**Article 8.   Defaults; Opportunity to Cure; Appropriate Remedies................................ 21**

Section 8.01   Default Notice. ...................................................................................... 21

Section 8.02   Opportunity to Cure. ............................................................................. 21

Section 8.03   Treatment of Uncured Default of Plan. ................................................. 21

Section 8.04   Conversion to Chapter 7. ...................................................................... 21

**Article 9.   Voting. ............................................................................................................ 22**

Section 9.01   Impairment under §1124. ...................................................................... 22

Section 9.02   Classes impaired under the Plan. .......................................................... 22

Section 9.03   Not voting. ............................................................................................ 22

**Article 10.  General Provisions and Disclaimers. ............................................................. 22**

Section 10.01  Disclaimers. ............................................................................................ 22

Section 10.02  Definitions and Rules of Construction. .................................................. 23

Section 10.03  Captions. ................................................................................................. 23

Section 10.04  Severability. ............................................................................................ 23

Section 10.05  Binding Effect. ........................................................................................ 23

Section 10.06  Controlling Effect. ................................................................................... 23

EXHIBIT 1 – CLAIMS AND CLASSIFICATION; CLASS 3 TREATMENT
EXHIBIT 2 – PLAN PROJECTIONS
EXHIBIT 3 – CASH FLOW PROJECTIONS
EXHIBIT 4 – §363 SALE AND DISTRIBUTION ANALYSIS
EXHIBIT 5  – LIQUIDATION ANALYSIS

# DEBTOR WENDT COMMUNICATION PARTNERS, LLC'S AMENDED CHAPTER 11 SUBHCPATER V PLAN OF REORGANIZATION

## Dated: January 6, 2025

## Article 1.    PLAN SUMMARY.

This document constitutes Debtor's plan of reorganization (the "Plan"), submitted pursuant to §§1189, 1191, 1193(a) of Title 11 of the U.S. Bankruptcy Code (the "Code"). Among other things, this Plan describes: (1) the Debtor; (2) the events leading to the bankruptcy filing; and (3) the approach that Debtor proposes to take to reorganize the company's financial affairs and liquidate the company assets in order to maximize recoveries for creditors. The Plan furthermore: (1) discusses how the Debtor proposes to treat various claims; (2) addresses the factors that the Court must consider to determine whether or not the Plan should be confirmed; (3) assesses the feasibility of the Plan; and (4) compares what holders of allowed general unsecured claims stand to recover under the Plan with what such claimants would receive if the company were to be liquidated under chapter 7 of the Code.

### Section 1.01    Creditor Prospectus and Liquidation Analysis.

Subject to all required court approvals, Debtor proposes to sell all or substantially all of the company assets within nine (9) months from the Effective Date, (defined in Section 6.04 belowSection 6.04 below), free and clear of any liens and encumbrances. Holders of general unsecured claims shall be entitled to distributions of: (a) the projected disposable income that is actually realized while Debtor continues to operate the business; and (b) proceeds from the sale of the assets after accounting for payments to: (i) holders of administrative claims; (ii) holders of allowed secured claims; and (iii) unclassified priority claims in accordance with Article 4 and Article 5 belowArticle 5 below. Holders of allowed general unsecured claims are projected to receive $242,554.17 or 22% of the total general unsecured claims scheduled in Debtor's petition or filed as a proof of claim.

(a) *Confirmation under §1191(b).* If Debtor is unable to solicit sufficient votes to confirm a consensual plan of reorganization under §1191(a), Debtor shall request confirmation under §1191(b).

(b) *Liquidation Analysis.* A liquidation analysis is attached hereto as Exhibit 5 and more fully discussed in Section 7.02 belowSection 7.02 below. After distributions to secured claims, priority tax and administrative claims, holders of allowed general unsecured claims are projected to receive $0.00, if the case were filed or converted to chapter 7.

### Section 1.02    Wendt Communication Partners, LLC

Wendt Communication Partners LLC is a privately held Limited Liability Company organized under the laws of the Commonwealth of Pennsylvania. The company's address is located at 5000 Ritter Road, Suite 202, Mechanicsburg, PA 17055. The company continues to operate its business pursuant to §§1107 and 1108.

<u>Section 1.03</u>    <u>Business History.</u>

1.      The company was founded by Mr. W. Douglas Wendt and Alice Wendt, his late spouse. The company began servicing customers on January 2, 2007. Over time, the company narrowed its focus to the configuration and implementation of an industry-leading marketing automation and customer relationship management suite, (the "CRM").

2.      Annual revenues grew from about $70,000.00 in 2018 to a peak of $2,979,814 in 2023, because of the company's commitment to becoming certified as value-added reseller (VAR) operating in the eco-system of a fast growing publicly traded marketing automation and CRM company (the "Vendor.").

3.      Presently, the majority of company revenues are derived from implementing the CRM and training customers in the use of the CRM under project-based or ongoing service contracts. The company also offers content creation and marketing services to existing clients only.

4.      About 35% of total revenues are sourced from commissions paid by the Vendor and clients referred to the company by the Vendor (the "Vendor Referrals"). The remainder of the income is sourced through direct sales to new customers and existing customers, and client referrals.

**WCP Expansion**.

5.      The company expanded its capacity and supported its growth through a variety of financing activities, including revolving credit, business loans, lines of credit, and loans from merchant cash advance companies ("MCAs"). The funds were used strategically to grow the company's visibility, and to support the expansion of the company's capacity to service larger clients.

6.      In many respects, the growth strategy was initiated at the recommendation of the Vendor's leadership team who intimated that the Vendor intended to aggressively pursue larger enterprise level clients. Leadership suggested that VAR partners desiring to contract with such enterprise clients would be required to maintain certain accreditation(s) and adhere to complex IT security and data protocols, all of which required significant investments.

7.      The company was also selected to assist the Vendor in high-level sales presentations to customers that required complex implementations. The collaboration resulted in a high rate of deal closings that benefited both the company and the Vendor.

8.      In anticipation of further and more aggressive growth, the company also retained outside fractional professional services, including a Chief Financial Officer (CFO)), a Chief People Officer (CPO); and a fractional Chief Revenue Officer (CRO), each of whom were hired for the years of experience that they purportedly had in the technology industry.

9.      The company also maintained high levels of payroll for the first seven to eight months of 2024 in anticipation of deals that ultimately never materialized.

<u>Section 1.04</u>   <u>Events Leading to Bankruptcy</u>

10.     Starting in early 2024, the close rate on enterprise client deals plummeted dramatically due to overall economic conditions and stiff price competition in the marketplace. Without notice to its VARs, the Vendor shifted its priorities away from enterprise clients to a monthly recurring revenue model that is more suited for smaller implementations (the "MRR Model"). VARs were required to meet certain volume thresholds to benefit from partner referrals from the Vendor.

11.     The company was unable to shift its operations to meet the new MRR Model thresholds. The new model effectively locked the company out of 30 to 40% of its revenue streams. WCP also lost the benefits of being a top-tier VAR in the Vendor's ecosystem. As a result, Vendor Referrals dropped 50% from the prior year. Overall sales declined rapidly, and the company lost its ability to secure larger contracts.

12.     By July 2024, the company began cutting its expenses by laying off full-time employees, reducing the high cost North American contractors, and reducing the company overhead as much as possible.

13.     Presently, Mr. Wendt is the only employee on the company payroll, and the company maintains a compliment of about 21 lower-cost virtual assistants that work out of Mexico, Columbia, South Africa, the Philippines, and India (Collectively the "VAs"). VAs take care of all general and administrative, client onboarding, support and account management and bookkeeping duties. Marketing is outsourced to a third-party lead-generation company.

14.     Sometime in late September, the company was notified that one of its creditors intended to enforce its rights to payment by seizing the company's receivables and the money due on current accounts directly from company customers.

15.     The company understood that any attempts at seizing customer accounts would result in irreparable harm to WCP's business reputation, an immediate loss of customers and accounts, and possibly the termination of the contract with the Vendor – any one of which would be fatal for the company.

16.     On October 1, 2024, (the "Petition Date"), WCP filed a petition for relief under chapter with the United States Bankruptcy Court for the Middle District of Pennsylvania.

<u>Section 1.05</u>   <u>Business Assets; and Proposed Sale.</u>

17.     As of the Petition Date, WCP's tangible assets were comprised of operating capital, accounts receivables and miscellaneous furniture and equipment, and various unliquidated causes of action with total estimated value of $221,001.56. [ECF No. 1, p. 14].

18.     WCP believes that its value as a going concern and the relationships and loyalty that it has established with past and current clients are the company's most valuable assets. WCP further believes that the best way of monetizing the value of the company is to stabilize the financial affairs of the company and liquidate the assets.

**Plan Summary**

Section 1.06    Summary of Classification.

This Plan provides for the sale of the company assets within nine (9) months from the Effective Date, and distributions to: three administrative convenience classes (Class 1.1; Class 1.2; and Class 1.3); two classes of secured creditors (Class 2.1 and Class 2.3); two classes of Contingent Claims against Future Receivables (Class 3.1 and 3.2); ~~One class of unperfected secured claims (Class 4);~~ and one class of general unsecured claims (Class ~~5~~4), which is comprised of nonpriority general unsecured claims: (a) that were scheduled in Debtor's petition, and/or filed as a proof of claim, and not scheduled as disputed, contingent, or unliquidated in Debtor's schedules; and (b) in an amount equal to the sum of the unsecured portion of any Class 2, 3, and 4 Claims. Recipients of this Plan are encouraged to review Article 4 below~~Article 4 below~~, together with the classification scheme set forth in Exhibit 1, for more information about the treatment of each class under this Plan.

Section 1.07    Plan Implementation.

To implement its Plan, Debtor intends to: (a) retain property of the estate; (b) operate the business for a period of not more than nine (9) months; and (c) subject to all required court approvals, to sell all or substantially all of the company assets free and clear of any liens on or before nine (9) months from the Effective Date of the Plan. The reorganized debtor intends to finance the cost of the reorganization with post-confirmation income and proceeds from the sale of the company assets. The implementation of the Plan is more fully discussed in Article 6 below~~Article 6 below~~.

Section 1.08    Disbursements and Distributions.

Except as otherwise provided, funds that are to be disbursed or distributed under this Plan shall be transferred to a Disbursement Fund, which is to be administered by a Disbursement Agent in accordance with Article 5 below~~Article 5 below~~.

Section 1.09    Requirements of Confirmation.

To be confirmed by the Court, a plan in a case under chapter 11 must, among other things: (a) comply with the provisions of the Code; (b) have been proposed in good faith and not by any means forbidden by law; (c) propose to pay each holder of a claim, who has not accepted the Plan, property that is at least equal in value to what such holder would receive if Debtor's assets were liquidated in a case under chapter 7; (d) propose to pay all administrative claims in full; and (e) propose to pay all priority claims in full with deferred payments or cash. In addition, any agreement to include post-petition credit or to sell securities in connection with the Plan must be approved by the Court. The requirements for confirmation as they relate to this Plan are more fully discussed throughout this Plan.

Section 1.10    Voting.

Each holder of an allowed claim that is impaired under this Plan is entitled to vote to accept or to reject the Plan. After the Plan is filed, the Court will schedule a hearing on confirmation and prescribe the procedures that Debtor must follow to solicit votes. In a subchapter V case, such as

the case at bar, confirmation of the Plan can be ordered under §1191(a), in the case of a consensual plan, and under §1191(b) in the case where an insufficient number of ballots have been cast to accept the Plan. The voting procedures and their effect on the confirmation of the Plan are more fully discussed in <u>Article 8 below</u>.

**Article 2.** CLAIMS.

<u>Section 2.01</u>   <u>Allowed Claims.</u>

Unless an objection to a claim is filed, a claim shall be "allowed" if it is timely filed as a proof of claim and/or listed in debtor's schedules and not designated as contingent, disputed or unliquidated. An allowed claim is deemed to be allowed in the amount set forth in the debtor's schedules or related proof of claim. Debtor makes no representations as to the validity or the amount of any claim scheduled or filed, and holders of claims should not presume that Debtor will not object to any claim even where such claims were not scheduled in Debtor's petition as being disputed, unliquidated, or contingent. Any claim allowed after an objection is filed shall be hereinafter referred to as a claim "allowed by a final order."

<u>Section 2.02</u>   <u>Objections to Claims.</u>

Objections to claims must be filed within thirty days (30) days from the Effective Date (defined in <u>Section 6.04 below</u><s>Section 6.04 below</s>) or thirty (30) days after an amended claim is filed, whichever occurs later. With regards to claims filed by governmental units after the confirmation of the Plan, objections to such claims must be filed not later than 30 days after the filing of the governmental claim.

<u>Section 2.03</u>   <u>Disputed, Contingent, and Unliquidated Claims.</u>

For the purposes of this Plan:

(a)   A "*disputed claim*" is a claim that has not been allowed or disallowed by a final order, and as to which: (i) a proof of claim has been filed or deemed filed, and the Debtor or another party in interest has filed an objection; (ii) no proof of claim has been filed, and the Debtor has scheduled such Claim as disputed, contingent, or unliquidated; or (iii) a bona fide dispute exists or has arisen regarding a filed claim. <s>Disputed Claims are included in and treated under Class 4. (See Section 4.04).</s>

(b)   An "*unliquidated and/or contingent claim*" shall mean a claim that: (i) is not capable of ascertainment by reference to an agreement or by simple computation; or (ii) is based on liability that remains uncertain and contingent on the occurrence of some future event; and (iii) which has not been allowed or disallowed. The Claims classified under Class 3 are contingent. (See <u>Section 4.03</u>).

<u>Section 2.04</u>   <u>Claim Estimates</u>.

In some cases, Debtor has estimated the value of certain claims that are disputed, unliquidated, and/or contingent. Subject to any required Court approvals, Debtor has estimated the amount of disputed, unliquidated and/or contingent claims for the purposes of developing conservative

projections under the plan. Debtor shall have the power and authority to fix the amount of disputed, unliquidated and/or contingent claims on an interim or final basis through a compromise with the holders thereof. Upon confirmation, this Plan shall be read as incorporating the terms and conditions of any final orders entered in connection with any compromised claims.

Section 2.05    Bar Date.

The deadline for filing claims scheduled as disputed, contingent or unliquidated, or with claims in amounts different from that listed in the Debtor's bankruptcy schedules has been set for December 27, 2024, with governmental units having until March 31, 2024, to file their claims. (the "Bar Date").

**Article 3.    UNCLASSIFIED CLAIMS; PRIORITY TAXES AND ADMINISTRATIVE CLAIMS.**

Section 3.01    Priority Tax Claims.

Pursuant to §1123(a)(1), claims for administrative expenses and priority tax claims are not classified ("Unclassified Claims").

(a) *Massachusetts Department of Revenue*. Debtor allegedly owes $9,321.57 to the Massachusetts Department of Revenue. (POC No. 4, the "MA-DOR Claim"), $7,153.17 of which is afforded priority under §507(a)(8). The Plan proposes to pay 100% of the priority portion of the MA-DOR Claim through monthly payments of $119.22 (calculated as $7,153.17 Divided by 60 payments), with a balloon payment of the remaining balance to be made from the proceeds of the sale of the company assets. The $2,168.40 non-priority portion of the claim will be included in Class 5̶4 and treated accordingly. All payments shall be administered by the Disbursement Agent in accordance with Article V below.

(b) *Internal Revenue Service*. Debtor allegedly owes $71,185.08 to the Internal Revenue Service. (POC No. 10, the "IRS Claim"), $52,486.15 of which is afforded priority under §507(a)(8). The Plan proposes to pay 100% of the priority portion of the IRS Claim through monthly payments of $993.99 (calculated as $52,486.15 Divided by 60 payments), with a balloon payment of the remaining balance to be made from the proceeds of the sale of the company assets. The $18,698.93 non-priority portion of the claim will be included in Class 5̶4 and treated accordingly. All payments shall be administered by the Disbursement Agent in accordance with Article V below.

Section 3.02    Administrative Claims.

Administrative claims are comprised of the costs or expenses of administering the Debtor's chapter 11 case which, subject to the court's approval, are allowed under §503 of the Code. Debtor estimates that the administrative claims will amount to about $29,000.00 through the Effective Date of the Plan; with an additional $35,000.00 incurred through the conclusion of the sale of the company assets. Estimates of administrative claims are accounted for in the plan projections ("Plan Projections"; Exhibit 2), analysis of the proposed sale, (the "§363 Sale Analysis"; Exhibit 4); and the liquidation analysis "Liquidation Analysis"; Exhibit 5), incorporated hereto.

Subject to any required court approvals, holders of administrative claims shall be paid directly by the reorganized debtor on the Effective Date in the case of pre-confirmation fees and expenses, and thereafter in the case of post confirmation fees and expenses.

## Article 4.    CLASSIFIED CLAIMS – CLASSIFICATION AND TREATMENT.

This Plan provides for the sale of the company assets within nine (9) months from the Effective Date, and distributions to: three administrative convenience classes (Class 1.1; Class 1.2; and Class 1.3); ~~two~~three classes of secured creditors (Class 2.1, Class 2.2, and Class 2.3); two classes of Contingent Claims against Future Receivables (Class 3.1 and 3.2~~); One class of unperfected secured claims (Class 4);~~; and one class of general unsecured claims (Class ~~5~~4), which is comprised of nonpriority general unsecured claims: (a) that were scheduled in Debtor's petition, and/or filed as a proof of claim, and not scheduled as disputed, contingent, or unliquidated in Debtor's schedules; and (b) in an amount equal to the sum of the unsecured portion of any Class 2~~, 3,~~ and ~~4~~Class 3 Claims.

## Section 4.01    Class 1 – Administrative Convenience Classes

The classes grouped under Class 1 consist of general unsecured claims that are reduced to $1,000.00 or less, based on the estimated distributions that the holders thereof would realize under the Plan. ("Class 1 Claims"). Debtor, in its business judgment, estimates that the effort and cost of administering payments to the holders of Class 1 Claims would outweigh any benefit that could be realized by the estate from making deferred payments to holders of Class 1 Claims over the duration of the Plan. Class 1 Claims are classified into three (3) separate classes of claims held by 3 different creditors. Unless otherwise expressly provided, all Class 1 Claims shall be treated as follows:

(a) *Allowed General Unsecured Claims*. Class 1 Claim shall be allowed in the amounts set forth hereunder. Holders of Class 1 Claims shall be entitled to contest the reduction or the amount of any Class 1 Claim not later than 30 days after the Effective Date.

(b) *Disbursement*. Class 1 shall be paid in full: (i) 90 days after the Effective Date; (ii) 30 days after any contest about a Class 1 Claim is resolved by a final order of the Court; or (iii) 30 days after the entry of final order approving the sale of the company assets (the "Sale Order"), whichever occurs earlier.

**CLASS 1.1.    Capital One**~~.~~ – Class 1.1 consists of the claim scheduled by Debtor as being owed to Capital One Bank NA in the amount of $2,500.00 that is being reduced to $579.48 for the sake of administrative convenience. Class 1.1 is impaired and shall be entitled to vote to accept or to reject the Plan**.**

**CLASS 1.2.    Best Buy**~~.~~ – Class 1.2 consists of the claim scheduled by Debtor as being owed to Best Buy in the amount of $2,582.72 that is being reduced to $598.66 for the sake of administrative convenience. Class 1.2 is impaired and shall be entitled to vote to accept or to reject the Plan**.**

**CLASS 1.3.   City National Bank.  –** Class 1.3 consists of the claim scheduled by Debtor as being owed to City National Bank in the amount of $2,654.00 that is being reduced to $615.18 for the sake of administrative convenience. Class 1.3 is impaired and shall be entitled to vote to accept or to reject the Plan.

Section 4.02   Class 2 – Secured Creditor Classes.

The classes of claims grouped under Class 2 are comprised of two (2three (3) secured claims in an aggregate amount of $438,088.01571,533.93. (Collectively "Class 2 Claims"). Class 2 Claims are the subject of security agreements executed by the Debtor, with UCC-1 statements filed by holders thereof. Class 2 Claims are secured by all asset liens that have attached to Debtor's interest in estate property, including Cash Collateral as that term is defined in §363(a). Debtor intends to retain, use and sell its assets under the Plan free and clear of the interests of holders of Class 2 Claims. Class 2 Claims are categorized into two (2three (3) groups of claims held by two (2three (3) different secured creditors. (Class 2.1; Class 2.2; and Class 2.2;).3). Unless otherwise provided for in this Section, all Class 2 Claims shall be treated as follows:

(a)   *Adequate Protection Payments*. Pursuant to the Interim Cash Collateral order issued by the Court, as may be amended, ([ECF Nos. 35]; the ("Cash Collateral Order"), Debtor shall continue to make adequate payments directly to holders of Class 2 Claims through the date of confirmation.

(b)   *Debtor's Interest in Estate Property*. Without waiving Debtor's rights to object to any claim or based on the valuation of the related collateral in accordance with Section 2.02 aboveSection 2.02 above, the value of the Debtor's interest in property of the estate shall be fixed, upon confirmation, at $109,308.36 as set forth in the Cash Collateral Order, [ECF No. 35].

(c)   *Cut-off of Class 2 Liens*. Debtor does not sell any inventory and generates 100% of its revenue from services provided to its clients. Except as otherwise provided in the Cash Collateral Order, property acquired by the estate or by the Debtor or the estate after the commencement of the case is not subject to the liens of the holders of Class 2 Claims by operation of §552.

(d)   *Treatment of Undersecured Portion of Class 2 Claims*. By operation of §506(a), and to the extent of the interest and priority that any holder of a Class 2 Claim may have in Debtor's interest in property that secures a Class 2 Claim, any difference between the value of the Debtor's interest in property of the estate and the total amount of the Class 2 Claims shall be allowed as a general unsecured claim and treated under Class 54 in accordance with Section 1.01 belowSection 4.05 below.

(e)   *Present Value of Allowed Class 2 Claims*. The present value of any allowed Class 2 Claim shall be calculated as: (i) the value of the Debtor's interest in the property that secures the claim; LESS (ii) any adequate protection payments actually made on account of such claim through the date of confirmation. Any party wishing to contest the present value of a Class 2 Claim, or the treatment afforded to such claim under this Plan shall be required to do so within 30 days from the Effective Date. Adjustments to the present value of any

8

Case 1:24-bk-02511-HWV   Doc 78   Filed 01/06/25   Entered 01/06/25 18:38:27   Desc
Main Document      Page 14 of 30

contested Class 2 Claim shall be finalized 30 days after the Effective Date, or 30 days after the entry of a final order on any related contest, whichever occurs later. Any deferred payments due on account of an adjusted Claim 2 Claim shall be adjusted proportionately, if such adjustments are finalized prior to the entry of the Sale Order.

(f) *Deferred Payments*. Unless otherwise expressly provided for in this Section, the reorganized debtor shall make equal monthly interest and principal payments to holders of allowed Class 2 Claims equal to the present value of the allowed Class 2 Claim bearing interest at the rate of 10.50% per annum. Monthly payments shall be made by the Disbursement Agent ~~as provided~~ in accordance with Article 5 below, beginning on the 20th day of the first month following the Effective Date, and shall continue until the entry of the Sale Order, or the conversion of the case to a chapter 7, whichever occurs earlier.

(g) *Retention of Lien*. Holders of allowed Class 2 Claims shall retain any liens securing their claims as such liens existed on the Petition Date, whether the property subject to such liens is retained by Debtor or transferred to another entity, and to the extent of the allowed amount of the secured claim.

(h) *Reservation of Rights to Sell Collateral*. Subject to §363(k), Debtor reserves the right to sell any collateral subject to a lien securing a Class 2 Claim, free and clear of such lien with such lien attaching to the proceeds of any sale or transfer and said proceeds to be distributed according to the interest and the priority of each Class 2 Claim.

(i) *Release of Lien*. Holders of any Class 2 Claim shall promptly release any lien on the property securing the claim upon receiving payment for the amounts due under this Plan.

**CLASS 2.1.    TD Bank, National Association** – Class 2.1.~~IDEA 247 INC. DBA IDEA FINANCIAL~~ Class 2.1. consists of the secured claim filed by TD Bank, National Association (POC No. 9), in the amount of $249,713.85 (the "Class 2.1 Claim"). TD Bank was ~~consists of the secured claim filed by Idea 247 Inc. (POC No. 8), in the amount of $134,341.38 (the "Class 2.1 Claim"). Idea is~~ the first secured creditor to perfect its interest in the property of the Debtor by filing a UCC-1 with the Office of the Pennsylvania Secretary of State~~,~~ on April ~~24, 2024~~27, 2023. This Plan assumes that ~~Idea 247~~TD Bank is the holder of the first-priority lien against the estate assets. Subject to any later adjustments, and after accounting for adequate protection payments to be made through the date of confirmation, the present value of the Class 2.1 ~~Claims~~Claim shall be fixed as $~~109,308.36. Idea 247~~0.00. shall be entitled to monthly principal and interest payments of $1,560.04, beginning on the 20th day of the first calendar month following the date of confirmation until the entry of the Sale Order, the conversion of the case, or the date upon which the Class 2.1 Claim is paid in full. The unsecured portion of the Class 2.1 Claim shall be allowed as a general unsecured claim and treated in Class ~~5~~4 in accordance with Section 1.01 below~~Section 4.05 below~~. Class 2.1 is impaired and shall be entitled to vote to accept or to reject the Plan.

**CLASS 2.2.    IDEA 247 INC. DBA IDEA FINANCIAL** ~~TD Bank, National Association.~~ ~~Class 2.2.~~ Class 2.2. consists of the secured claim filed by Idea 247 Inc.  (POC No. 8), in the amount of $134,341.38 (the "Class 2.2 Claim"). Idea was the ~~consists of the secured claim filed by TD Bank, National Association (POC No. 9), in the amount of $249,713.85 (the "Class 2.2 Claim"). TD Bank was~~ second secured creditor to perfect its interest in the property of the Debtor by filing a UCC-1 with the Office of the Pennsylvania Secretary of State, on April ~~27~~24, 2024. This Plan assumes that ~~TD Bank's~~Idea 247's interest is junior to that of Class 2.1. Subject to any later adjustments, and after accounting for adequate protection payments to be made through the date of confirmation, the present value of the Class 2.2 ~~Claim~~Claims shall be fixed as $0.00. ~~TD Bank~~Idea 247 shall not be entitled to ~~any~~ deferred payments under this Plan. The unsecured portion of the Class 2.2 Claim shall be allowed as a general unsecured claim and treated in Class ~~5~~4 in accordance with Section 1.01 below~~Section 4.05 below~~. Class 2.2 is impaired and shall be entitled to vote to accept or to reject the Plan.

~~CLASS 2.2.~~CLASS 2.3.  ODK CAPITAL –  Class 2.3 consists of the secured claim filed by ODK Capital, LLC in the amount of  $187,478.70 (POC No. 6). ODK perfected its security interest by filing a UCC-I with the Office of the Secretary of State of Pennsylvania on July 1, 2024. Subject to any later adjustments, and after accounting for adequate protection payments to be made through the Effective Date, the present value of the Class 2.3 Claim shall be fixed as  $0.00.  ODK Capital, LLC shall not be entitled to any deferred payments as a secured creditor. The unsecured portion of the Class 2.3 Claim shall be allowed as a general unsecured claim and treated in Class 4 in accordance with Section 1.01 below.  Class 2.3 is impaired and shall be entitled to vote to accept or to reject the Plan.

Section 4.03    Class 3 – Contingent Claims Against Future Receivables.

The classes grouped under Class 3 are comprised of claims held by two merchant cash advance companies ("MCA Companies") that advanced funds to the Debtor in exchange for a pre-petition right to a stream of payments from Debtor's future receipts at an agreed upon rate and frequency. Under the related agreements, repayments cease when the funding amount is paid in full, or if the business ceases to operate. The MCA Companies also purport to hold a security interest in the Debtor's future receivables~~, and the MCA Companies filed UCC-1 financing statements accordingly.~~. The nature and extent of the Class 3 Claims in the estate's future receivables are disputed by Debtor and contingent on the outcome of adversary proceedings that may be required to determine the extent and nature of the MCA Companies' interests in the property of the estate. Accordingly, Class 3 Claims are deemed to be "contingent" and "disputed claims" as those terms are defined in Section 2.03 above~~Section 2.03 above~~.

The Claims classified under Class 3 are categorized into two (2) classes of claims held by two (2) different MCA Companies. (Class 3.1; and Class 3.2; collectively the "Class 3 Claims"). Without waving the estate's right to contest the enforceability of the Class 3 Claims against property of the estate, and unless otherwise provided for in this Section, all Class 3 Claims shall be treated as follows:

(a)  *Status as Junior Lienholders*. To the extent that Class 3 Claims are secured by Debtor's interest in property of the estate in which Class 2 Claims are also secured, Class 3 Claims are junior to those of any Class 2 Claims, and the total amount of the Class 3 Claims are

unsecured and shall be allowed as general unsecured claims to be treated in Class ~~5~~4 in accordance with Section 1.01 below~~Section 4.05 below~~.

(b) *Cut-off of Class 3 Liens*. Debtor does not sell any inventory and generates 100% of its revenues from services provided to its clients. By operation of §552, any liens held by holders of Class 3 Claims against property acquired by the estate or by the debtor after the commencement of the case are cut off as of the Petition Date.

(c) *Distributions.* Unless otherwise agreed to or determined by a final order of this Court, holders of Class 3 Claims shall be entitled to distributions of the proceeds of the sale of the company assets *pari passu* with holders of Class ~~5~~4 Claims.

(d) *Delayed Distributions to Class 3 Claims*. Any distributions owed to holders of Class 3 Claims from the sale of the company assets, from Debtor's disposable income, or from any funds segregated pending the resolution of the dispute with the Debtor, shall be held back and distributed in accordance with the terms of a final order of the court~~.~~, and/or as provided in Section 5.04 below. Any distributions to Class 3 Claims shall be administered by the Disbursement Agent ~~as provided for~~ in accordance with Article V below.

(e) *Release of Lien*. Holders of Class 3 Claims shall promptly release any lien encumbering property of the Debtor and of the estate upon receiving any payments due under this Plan, or as set forth in any related order.

**CLASS 3.1.   ASSN Company (d/b/a ByzFunder).** Class 3.1. consists of the claim filed by ByzFunder (POC No. 15), in the amount of $87,659.05 (the "Class 3.1 Claim"). ByzFunder ~~perfected its security interest by filing~~entered an agreement with the Debtor on June 14, 2024, and did not file a UCC-I with the Office of the Secretary of State of Pennsylvania~~on July 1, 2024, after the date when the last holder of a Class 2 Claim perfected its lien against the property of the Debtor~~. The present value of the secured portion of the Class 3.1 Claim shall be fixed as $0.00. ByzFunder shall not be entitled to any deferred payments as  a secured creditor. ByzFunder shall have 30 days from the date of confirmation to pursue an adversary proceeding to determine the validity, priority, or the extent of its lien or other interest in the future receipts of the Debtor or the estate, or forever be barred from receiving any distributions under this Plan other than its prorata share of the distributions due to holders of allowed Class ~~5~~4 Claims. Class 3.1 is impaired and entitled to vote to accept or to reject the Plan.

**CLASS 3.2.  WebFund, LLC.** Class 3.2. consists of the claim filed by WebFund, LLC, (POC No. 14), in the amount of $127,799.98 (the "Class 3.2 Claim"). ~~WebFund perfected its security interest by filing~~ WebFund entered into the agreement with Debtor on August 23, 2024, and filed a UCC-I with the Office of the Secretary of State of Pennsylvania on August 27, 2024, after the date when the last holder of a Class 2 Claim perfected its lien against the property of the Debtor. The present value of the secured portion of the Class 3.2 Claim shall be fixed as $0.00. Unless otherwise agreed to or determined by a final order of this Court, WebFund, LLC shall not be entitled to any deferred payments as a secured creditor. WebFund, LLC shall have 30 days from the date of confirmation to pursue an adversary proceeding to determine the validity, priority, or the extent of its lien or other interest in the future receipts of the Debtor or the estate, or forever be barred from receiving any distributions under this Plan other than its prorata share of the distributions due to holders of allowed Class 5~~4~~ Claims. Class 3.2 is impaired and shall be entitled to vote to accept or to reject the Plan.

(a)  *Segregated Funds Pending Resolution of Adversary Proceedings.* Notwithstanding the foregoing, Debtor shall segregate seven (7%) percent of its monthly gross revenues for the months of October 2024~~,~~ through not later than February 2025 to give Class 2~~3~~.2 time to pursue an adversary proceeding and obtain a judgment determining its rights in the estate's future receivables. Upon confirmation, Debtor shall turn over any segregated funds to the Disbursement Agent who shall maintain and administer the funds until the entry of a final order determining the respective rights of the parties, or ~~as provided~~ in accordance with Article V.

~~Section 4.04    Class 4 - Unperfected secured claims.~~

~~Class 4 consists of any claims against the Debtor under a security agreement, for which a UCC-1 was not filed with the Office of the Pennsylvania Secretary of State, (the "Class 4 Claims"). As of the date of this writing, Class 4 consists of the secured claim filed by ODK Capital, LLC in the amount of  $187,478.70 (POC No. 6). Subject to any later adjustments, and after accounting for adequate protection payments to be made through the Effective Date, the present value of the Class 4 Claim shall be fixed as $0.00.~~ ~~ODK Capital, LLC shall not be entitled to any deferred payments as a secured creditor.~~ ~~The unsecured portion of the Class 4 Claim shall be allowed as a general unsecured claim and treated in Class 5 in accordance with~~ ~~Section 4.05~~ ~~below.  Class 4 is impaired and shall be entitled to vote to accept or to reject the Plan.~~

~~Section 4.05~~Section 4.04        General Unsecured Claims.

Class 5~~4~~ is comprised of nonpriority general unsecured claims: (a) that were scheduled in Debtor's petition, and/or filed as a proof of claim, and not scheduled as disputed, contingent, or unliquidated in Debtor's schedules; and (b) in an amount equal to the unsecured portion of any Class 2, 3, and 4 Claims (Collectively "Class 5~~4~~ Claims").

(a)  *Allowed General Unsecured Claims*. Without waving any rights to object to any Class 5~~4~~ Claim, and for the sole purpose of developing conservative projections, Debtor assumes that $1,092,869.23 in Class 5~~4~~ Claims shall be allowable pursuant to §502(a) of the Code, if not objected to as set forth in Section 2.02 above~~Section 2.02 above~~.

(b) *Treatment and Distributions.* Holders of allowed Class ~~5~~4 Claims shall be entitled to receive, in accordance with Article 5 below, quarterly distributions of their prorata share of Debtor's disposable income, and a prorata share of the proceeds from the sale of the business after accounting for the payment of allowed administrative claims, secured claims, priority unsecured claims, and the costs of sale, as shown in Section 5.04(c) below~~Section 5.04(c) below~~.

(c) *Impairment.* Class ~~5~~4 is impaired, and holders of an allowed Class ~~5~~4 Claim are entitled to vote to accept or to reject the Plan.`

~~Section 4.06~~Section 4.05          Insider Claim.

Douglas Wendt owns a 100% interest in WCP and is deemed an "insider" as that term is defined in §101(31) of the Code. Debtor has not scheduled a claim for Mr. Wendt. Nor has Mr. Wendt filed a proof of claim. Mr. Wendt shall not be entitled to any distributions under this Plan. Any vote cast by Mr. Wendt shall not be counted toward the acceptance of the Plan.

## Article 5.     PLAN DISBURSEMENTS AND DISTRIBUTIONS

Section 5.01     The Disbursement Fund.

As part of the implementation of the Plan, Debtor in possession has elected to establish a disbursement fund, in a separate deposit account, into which any amounts due under the Plan shall be deposited and administered. (the "Disbursement Fund").

Section 5.02     Appointment of Disbursement Agent.

Upon confirmation, Lisa A. Rynard, the Subchapter V Trustee or Dennery, PLLC, Debtor's counsel, as shall be designated in the final order of confirmation, shall be appointed as the Disbursement Agent. The Disbursement Agent shall be charged with the management of the Disbursement Fund in accordance with this Article, with any requirements for a fidelity bond being waived.

(a) *Duties of the Disbursement Agent.* The Disbursement Agent shall administer funds to be deposited into the Disbursement Fund and the distributions that are due in accordance with the terms of this Plan and any related orders. All funds coming into the Disbursement Fund shall be held in a separate bank account used solely for that purpose. The Disbursement Agent shall be responsible for preparing a final accounting of all distributions made in this case.

(b) *Monitoring.* The reorganized debtor, the U.S. Trustee and any creditor with an allowed claim may monitor the Disbursement Fund and the distributions made by the Disbursement Agent. Upon request, the Disbursement Agent shall make available to the reorganized debtor, the U.S. Trustee and/or any creditor with an allowed claim, all receipts, books, account statements, reports, or records related to the Disbursement Fund within a reasonable time after receiving a request for such information.

(c) *Compensation and Reimbursement of Disbursement Agent.* The Disbursement Agent shall be compensated on an hourly basis or in an amount equal to 5% of the amounts deposited into the Disbursement Fund, whichever is less, PLUS the necessary and actual out-of-pocket expenses incurred in connection with the administration of the Disbursement Fund, including but not limited to wire transfer fees, electronic payment fees, and/or printing and postage costs, ("Disbursement Fees"). Compensation to the Disbursement Agent and the reimbursement of Disbursement Fees shall have priority over any other disbursements, distributions or payments to be made under the Plan from the Disbursement Fund.

(d) *Removal of Disbursement Agent.* The reorganized debtor, any creditor with an allowed claim, the U.S. Trustee, or any party in interest shall be entitled, after notice and a hearing, to remove and replace the Disbursement Agent for cause. Any successor thereof shall be appointed by the Court after notice and a hearing.

Section 5.03     Class 2 Deposits and Payments.

Beginning on the 10ᵗʰ day of the first calendar month following the Effective Date, and each month thereafter until the entry of the Sale Order, Debtor shall deposit into the Disbursement Fund the monthly payments segregated for the benefit of, or due to holders of Class 2 Claims, plus any related Disbursement Fees. The Disbursement Agent shall review and produce a check register and/or prepare checks and ensure that payments are transmitted directly to each holder of an allowed Class 2 Claim so that such holder receives the payment by the 20ᵗʰ day of each calendar month following the Effective Date and ending on the date of the entry of the Sale Order.

Section 5.04     Disposable Income, Disbursements, and Distributions.

For the purposes of this Plan, the term "Disposable Income" shall mean income that is actually received by the reorganized debtor, which is not reasonably necessary to be expended for the payment of expenditures necessary for the continuation, preservation and operation of the business of the debtor, after accounting for: (1) Disbursement Fees; (2) allowed administrative claims and expense reimbursements entitled to administrative priority pursuant to §503(b) and/or §507(a); (3) payments due to holders of allowed Class 1 and Class 2 Claims; and (4) funds segregated for holders of Class 3 Claims as set forth in ~~Section 4.03~~Section 4.03, ~~CLASS 3.2~~CLASS 3.2 (a) ~~above(a) above~~.

(a) *Deposits and Disbursements of Segregated Funds; Class 3 Fund.* Within 10 days after the confirmation of the Plan, the reorganized debtor shall transfer to the Disbursement Fund, all funds that were segregated pursuant to Section 4.03, CLASS 3.2 (a) above, and/or that are required to be paid to holders of Class 3 Claims under a related final order (the "Class 3 Fund").

(i) Initial Disbursement. Within 20 days from the entry of a final order determining the nature and extent of the interest that holders of Class 3 Claims have in the property of the estate, the corpus of the Class 3 Fund shall be disbursed: (A) *prorata* to holders of any allowed Class 3 Claims, in the case where such holders prevail in an adversary proceeding; OR (B) to the Class ~~5~~4 Fund (defined below) in the case where the holders of Class 3 Claims either: (1) fail to timely bring an adversary proceeding, or

(2) do not prevail in showing that they have an interest in the future receipts of the reorganized debtor or the estate. (The "Initial Class 3 Disbursement").

(ii) <u>Class 3 Distributions</u>. If holders of Class 3 Claims prevail in their adversary proceedings and are entitled to distributions under this Plan, the reorganized debtor shall segregate and deposit into the Disbursement Fund any amounts due to holders of allowed Class 3 Claims in accordance with any related final orders.

(b) *Deposits, Disbursements, and Distributions of Disposable Income; Class 5̶4 Fund*. Beginning on the 10th day of the first month following the Effective Date, the reorganized debtor shall make monthly deposits into the Disbursement Fund of any Disposable Income, plus any estimated Disbursement Fees (the "Class 5̶4 Fund").

(i) <u>Initial Disbursement; Class 5̶4 Fund</u>. On or before the 20th day of the first calendar quarter following the Effective Date, the Disbursement Agent shall disburse the corpus of Class 5̶4 Fund, *prorata* on a claim basis, to holders of any allowed Class 5̶4 Claims. (The "Initial Class 5̶4 Disbursement").

(ii) <u>Quarterly Distributions; Class 5̶4</u>. On the 20th day of the first month of the quarter following the Initial Class 5̶4 Disbursement, the Disbursement Agent shall distribute any Disposable Income on deposit in the Disbursement Fund to holders of Class 5̶4 Claims allowed pursuant to § 502(a), pro rata on an allowed claim basis, until the earlier of: (A) the date on which the last Class 3̶,̶ ̶C̶l̶a̶s̶s̶ ̶4̶,̶ ̶a̶n̶d̶ ̶C̶l̶a̶s̶s̶ ̶5̶ Claim that is disputed, contingent and/or unliquidated is allowed or disallowed by a final order of the Court; or (B) the entry of the Sale Order. ("Quarterly Distributions").

(iii) <u>Catch up Distributions</u>. Beginning on the 20th day following the date on which the last Class 3̶,̶ ̶C̶l̶a̶s̶s̶ ̶4̶,̶ and Class 5̶4 Claim that is allowed or disallowed by a final order of the Court, all Quarterly Distributions shall cease temporarily, and 100% of the Disposable Income shall be distributed, on a quarterly basis, to holders of Class 3, Class 4,̶ ̶C̶l̶a̶s̶s̶ ̶5̶ Claims that were allowed by a final order of the Court, prorata on a claim basis, until such holders realize a recovery equal to the sum of: (1) the Initial Class 5̶4 Disbursement; and (2) the Quarterly Distributions that such holders would have realized to date had their claims been allowed as a Class 5̶4 Claim on or before the Effective Date.

(iv) <u>Forfeiture; Unclaimed Distributions</u>. All unclaimed distributions shall revert to the estate after forty-five days of issuance by the Disbursement Agent and shall be forfeited as to the affected creditor. Any creditor who forfeits a distribution will thereafter be treated as having a disallowed claim.

(c) <u>Distributions of Sale Proceeds</u>. Within a reasonable time after the entry of the Sale Order and the deposit of sale proceeds into the Disbursement Fund, the Disbursement Agent shall make disbursements in the following order of priority:

(i) <u>First</u>, to reimburse and/or defray the costs of the sale of the company assets, including any compensation to brokers that have been approved by a final order of the Court.

(ii)  Second, to any allowed administrative convenience claims classified under Class 1 for the balance owed to the holders thereof under this Plan, if any.

(iii)  Third, prorata to holders of any administrative claims in an amount equal to the balance of any administrative expenses and fees allowed by a final order of the Court, if any;

(iv)  Fourth, prorata to holders of allowed secured claims that are entitled to distributions as secured creditors under this Plan and that are classified under Class 2 to the extent of such holders' interest in Debtor's interest in the property that secured such claims;

(v)  Fifth, prorata to holders of unclassified priority unsecured claims;

(vi)  Sixth, prorata to holders of Class 3 Claims in the amounts and manner provided for in any related final orders, in the case where Class 3 Claims have filed an adversary proceeding and are entitled to distributions under this Plan as set forth in Section 4.03; CLASS 3.1; and CLASS 3.2 above;

(vii)  Seventh, as a catch up payment to holders of Class 3~~, Class 4,~~ and Class ~~5~~4 Claims that were allowed by a final order entered after the Effective Date, prorata on a claim basis, until such holders realize a recovery equal to the sum of: (1) the Initial Class ~~5~~4 Disbursement; and (2) the Quarterly Distributions that such holders would have realized to date had their claims been allowed as a Class ~~5~~4 Claim on or before the Effective Date.

(viii)  Eighth, prorata to holders of all allowed Class ~~5~~4 Claims.

## Article 6.    IMPLEMENTATION.

To implement the Plan, Debtor intends to: (a) retain property of the estate and continue its operations until a sale of the company assets is consummated; (b) work with a stalking horse bidder and/or turnaround professionals to develop a bid package that can maximize recovery for general unsecured creditors; and (c) conduct and finalize a sale of the company assets pursuant to court approved bidding and sale procedures.

Section 6.01    Wendt Communication Partners, LLC; Management.

(a)  *Insiders.* W. Douglas Wendt is the 100% owner of the company. Mr. Wendt will continue on as the chief executive officer until the entry of the Sale Order. While the company is operating, Mr. Wendt shall remain accountable for the implementation and for the management and operations of the reorganized debtor in accordance with the Plan.

(b)  *Other Staff and Virtual Assistants.* The reorganized debtor intends on retaining, or replacing from time to time, its complement of VAs. Where appropriate, WCP will supplement its existing human resources with additional VAs and/or employees at rates of pay that are commensurate with industry standards.

(c)  *Brokers and Turnaround Professionals.* WCP recognizes that to prepare for the sale of the company assets, it will require the assistance of a business broker and/or auctioneer, and perhaps a turnaround professional to help reorganize and manage the operations of the company until a sale. ("Turnaround Professionals"). Turnaround professionals shall

be employed subject to court approval pursuant to applications submitted under §§327(a), 328, 330, and 331, or where applicable under §363(b). The Plan Projections account for $15,000.00 in fees to turnaround professionals, (Exhibit 3), and the Sales Analysis estimates the costs of selling the company assets at 5% of the total prevailing bid. (Exhibit 4).

(d) *Pre-confirmation Retention and Compensation of Professionals*. WCP will have to retain one or more accountants to complete its 2024 tax filings and to dispute tax assessments issued by various state taxing agencies since the filing of the case. Debtor shall submit applications to retain any professionals for any services as required by §§327(a), 328, 330, and 331 of the Bankruptcy Code. Debtor has accounted for $5,000.00 in accountant fees, (Exhibit 3).

(e) *Retention and compensation of Disbursement Agent*. Upon confirmation, the Disbursement Agent shall be retained to assist with the implementation of the Plan without the need for further applications or orders. See Section 5.02(c) above~~Section 5.02(c) above~~.

Section 6.02    The Liquidating Plan.

The Wendt Partners' brand has stood out as a VAR within the Vendor ecosystem because of its focus on marketing and sales, competitive pricing, superior customer service, and its subject matter expertise. The company has struggled, however, to manage and expand its production capacity, given the demands of larger enterprise clients and the competing pressure to increase its monthly recurring revenues from smaller clients. The result is a perennial lag in project completion, which in turn creates a bottleneck in current work and slows customer payments. After accounting for the deep discounts and high rates of repayment due to MCA Companies and the company's other debt obligations, the company's cash flow cannot sustain the inefficiencies.

Debtor recognizes that it needs to invest significant resources into developing and operationalizing cost-effective production processes. Debtor does not believe that it can do so without hiring or partnering with an expert with a track record of success in operating a VAR in the Vendor ecosystem, or a similar ecosystem. Nor does the company have the resources or access to the level of capital that would be required to make the type of changes that would sustain the company over the long term.

Since the filing of the petition, Debtor has discovered that there is a strong appetite by similar-sized consultancies, operating in the same or similar ecosystem, to scale through acquisition. Debtor has conducted preliminary negotiations with various interested parties. In its business judgment, Debtor believes that it can maximize recovery for its creditors over not more than nine (9) months by selling rather than by investing in the restructuring the company and pursuing a full-blown reorganization. The successful reorganization and liquidation depend in large part on:

(a) Reducing, and/or reorganizing the company's current liabilities over the next nine (9) months.

(b) Marketing the company to potential buyers and selecting a stalking horse bidder that is seeking to scale through the acquisition of a consultancy such as WCP.

(c) Quantifying the going concern value of the company; and

(d) Developing bid specifications and sales procedures that ensure that the best and most qualified bidder acquires the company assets for the highest possible bid.

Section 6.03    Plan Projections; Sources and Uses.

The Plan will be funded through the reorganized debtor's operating income, recoveries or awards obtained through litigation or compromises, and the sale of the company assets and its value as a going concern. (Exhibit 3 and Exhibit 4).

(a) *Operating Income.* All distributions to be made under the Plan prior to the sale of the company assets will be funded by operating income. Debtor projects that $367,107.82 in operating income will fund the payment of administrative fees and expenses, payments to secured lenders, and payments to holders of priority claims, leaving an estimated $~~162,123.28~~167,185.89 in disposable income that is projected to be available for distributions to general unsecured creditors over nine months of operations. (Exhibit 3).

(b) *Sale of Assets.* Subject to the entry of a final order authorizing a sale under §363(f), (the "Sale Order"), Debtor intends to sell all company assets, free and clear of any liens or encumbrances with such liens attaching to the proceeds of such for the benefit of the allowed secured claims classified under Class 2. Any sale shall be finalized not later than nine (9) months from the Effective Date. Debtor estimates, based on its present financial position and on discussions had thus far with potential buyers that $51,921.86 in current assets at the time of the sale combined with an estimated purchase price of $300,000.00 could result in a recovery of ~~8.32%~~6.9 % of the face value of Claims treated under Class ~~5~~4. Debtor shall propose bidding procedures that establish a minimum bid at an amount equal to the positive difference, if any, between: (i) the cash value of the current assets of the estate at the time of the sale; and (ii) the sum of all allowed administrative claims, secured claims, and priority claims. Thus, ensuring that the exposure of the company assets to the broader marketplace maximizes recoveries for the general unsecured creditors. (Exhibit 4 provides an estimate of what Debtor believes the estate will have in funds at the time of the sale, and the cash amount of a prevailing bid expects to command from a sale of its assets).

(c) *Recoveries.* Debtor expects to recover $14,990.09 from various creditors that are in possession of estate funds, and/or that have effectuated unauthorized post-petition withdrawals from Debtor's deposit accounts, including those parties listed in Section 6.06 below~~Section 6.06 below~~. Debtor continues to investigate whether additional causes of action could be brought against other parties. Any amount recovered shall be preserved for the benefit of the estate as shown in Exhibit 3, and ultimately inure to the benefit of creditors.

(d) *Obtaining Post Petition Credit.* Although this Plan does not contemplate additional debt, nothing in this Plan shall be construed as Debtor's waiver of its right to solicit or obtain credit in the ordinary course of its business, or outside of the ordinary course of business: (i) with priority over any or all administrative expenses of the kind specified in §§503(b)

or 507(b); (ii) secured by a lien on property of the estate that is not otherwise subject to a lien; or (iii) secured by a junior lien on property of the estate that is subject to a lien.

Section 6.04    The Effective Date.

The Plan shall become effective as of the first day of the first calendar month falling after the confirmation of the Plan, unless a stay of the confirmation order is in effect on that date, in which case the effective date shall be the first day of the first calendar quarter after the date on which the stay of the confirmation order expires or is otherwise terminated. (Referred throughout as the "Effective Date").

Section 6.05    Plan Duration; Term.

Unless modified after confirmation, the Plan shall last until the entry of the Sale Order, or the expiration of nine (9) months from the Effective Date, whichever occurs earlier. All payments, disbursements, and distributions that are to be made from the proceeds of the sale shall be made within a reasonable time from the entry of the Sale Order. Nothing in this Plan shall be construed as preventing the reorganized debtor from selling its assets prior to the nine-month term following the Effective Date. The Plan shall terminate on the date that the last payment due under this Plan is made.

Section 6.06    Vesting of Property of the Estate; Causes of Action.

(a) *Vesting of Property of the Estate – 1191(b)*. if this Plan is confirmed under §1191(b), property of the estate, as defined in §541 and §1186(a) shall vest in Debtor on the date that the last payment due under this Plan is made, the conversion of the case to a case under Chapter 7, or dismissal of the case, whichever occurs earlier.

(b) *Vesting of Property of the Estate* – 1191(a). If the Plan is confirmed under 1191(a), property of the estate, as defined in §541 shall vest in the reorganized debtor upon the confirmation of the Plan. Nevertheless, the disposable income of the reorganized debtor shall be deposited and distributed in accordance with Section 5.04 above, and the debtor in possession shall have the exclusive right to the proceeds from the sale of the property of the Debtor as well as the exclusive right to pursue any relief to which the estate may be entitled including without limitation, any cause of action: (a) arising under 542, 543, 544, 547, 548, 549, 550, or 553 of the Bankruptcy Code; or (b) for breach of contract, accounts payable or other commercial actions against customers or vendors; or (c) for intentional torts or negligence causing damage to the company. Specifically, the debtor in possession reserves the right to bring, on behalf of the estate, actions against:

(i) IDEA 247 INC. DBA IDEA FINANCIAL, WebFund LLC, ASSN Company d/b/a ByzFunder, and/or ODK Capital, LLC for avoidance and/or recovery of prepetition transfers that were preferential, or made without reasonably equivalent value under §§ 547 and 548; and against

(ii) Citizens Bank, NA; Wells Fargo Bank, NA, PNC Bank, NA; Santander Bank NA; TD Bank NA, and ASSN Company d/b/a ByzFunder for a turnover of estate property under §542(a); and/or unauthorized post-petition transfers under §549.

Any recovery resulting from the pursuit of a cause of cation, net of the costs of recovery, shall be preserved for the benefit of the estate in accordance with §551. Any cause of action not pursued within nine (9) months from the Effective Date shall be deemed abandoned without further order from the Court.

Section 6.07    Post Confirmation Injunction; § 1191(a).

**Fed. R. Bankr. P 2002(c)(3) NOTICE: THIS PLAN PROVIDES FOR AN INJUNCTION AGAINST CONDUCT THAT IS NOT OTHERWISE ENJOINED UNDER THE BANKRUPTCY CODE. THE INJUCTION IS SET FORTH BELOW.**

If this Plan is confirmed consensually under §1191(a), and property of the estate vests in the reorganized debtor upon the confirmation of the Plan as provided in Section 6.06(b) above~~Section 6.06(b) above~~, this Plan shall act as an injunction against the holders of any claims that have filed a proof of claim, that are listed in Debtor's schedules, and/or that are treated in this Plan, including without limitation those creditors that are listed in Exhibit 1 to this Plan, are enjoined from taking any act: to: (a) obtain possession, or to exercise control of property of the Debtor; or (ii) create, perfect, or enforce any lien against property of the Debtor for the period beginning on the date of confirmation through the date of an entry of the Sale Order or the dismissal or the conversion of this case, whichever occurs earlier. Any party aggrieved by a default under this Plan is limited to the remedies provided in Article 8 of this Plan.

Section 6.08    Assumption and Rejection of Executory Contracts.

Except as otherwise provided for in this Section or in a final order issued by the Court, the Debtor shall be deemed to have rejected all pre-petition executory contracts and/or unexpired non-residential leases not expressly assumed by way of a motion approved by a final court order. Any parties to a rejected executory contract or an unexpired non-residential lease that has incurred damages as a result of the rejection shall file a proof of a claim for breach damages arising out of the rejection not later than thirty (30) days after the confirmation of the Plan. Upon confirmation, Debtor shall assume the following executory contract(s):

(a)    The HubSpot Partner Program Agreement executed between Wendt Communication Partners LLC and HubSpot, Inc. with an effective date of January 31, 2013.

Section 6.09    Discharge.

This Plan provides for the liquidation of all or substantially all of the property of the estate, and the Debtor does not intend to engage in business after the consummation of the sale. Debtor, as a corporation, would not be entitled to a discharge under §727(a) of the Code. Debtor, therefore, shall not be entitled to a discharge under §1141(d)(3) from any debt or claim that arose before confirmation of this Plan.

**Article 7.**   FEASIBILITY AND LIQUIDATION ANALYSIS

Section 7.01   Feasibility and Contingencies.

Debtor remains conscious that the occurrence of various operating contingencies could prevent Debtor from implementing the Plan as proposed herein. Nevertheless, the Plan Projections incorporated into the Plan show that Debtor will be able to make all payments due under the Plan, remain cash flow positive and administratively solvent during the life of the Plan, and that the confirmation of the Plan is not likely to be followed by liquidation under chapter 7 or the need for further financial reorganization. (See Exhibit 3).

Section 7.02   Liquidation.

After accounting for a liquidation discount, the secured lenders, administrative expenses, and the costs of liquidation, Debtor expects that holders of allowed general unsecured claims treated under Class 5~~4~~ would not retain property or receive any distributions of a value that is less than if Debtor was liquidated under a chapter 7 (Exhibit 5).

**Article 8.**   DEFAULTS; OPPORTUNITY TO CURE; APPROPRIATE REMEDIES

Regardless of whether the Plan is confirmed under §1191(a) or §1191(b), The following procedures shall be followed in the event of a default under this Plan:

Section 8.01   Default Notice.

Subject to any orders entered in this case, any party in interest aggrieved by a material default under the provisions of this Plan, may provide written notice to the reorganized debtor and to the Subchapter V Trustee (a "Default Notice"). The Default Notice must describe with specificity the nature of the default alleged and the steps required to cure such default.

Section 8.02   Opportunity to Cure.

The reorganized debtor shall have thirty (30) days after receiving a written Default Notice to cure such default. The aggrieved Claimant or party in interest shall take no further action until at least thirty (30) days have passed and the reorganized debtor has not cured or substantially complied with the Default Notice. Even after the thirty-day period has expired, the reorganized debtor may cure a default at any time, even after an application or motion has been filed by an aggrieved party.

Section 8.03   Treatment of Uncured Default of Plan.

If the reorganized debtor defaults in its obligations under the Plan, and after the required notice and opportunity to cure, the default remains uncured, the aggrieved party may bring the matter before the Court, and the Court may thereafter order the reorganized debtor to liquidate any available assets and disburse the proceeds as appropriate to pay the obligations under the Plan or provide such other relief in the Court's discretion.

Section 8.04    Conversion to Chapter 7.

Given that Debtor is proposing a liquidating plan, Debtor's failure or inability to sell the company assets within nine (9) months from the Effective Date shall constitute an incurable material default under this Plan. Upon the filing of a notice of the Debtor's failure to sell the company assets within nine months from the Effective Date by the U. S. Trustee, the Subchapter V Trustee, any creditor with an allowed claim, the debtor in possession or the reorganized debtor, this case shall be converted to a case under chapter 7 of the Bankruptcy Code without the need for a hearing.

**Article 9.    VOTING.**

A chapter 11 debtor must solicit and obtain votes accepting the plan before it can be confirmed. Holders of allowed claims or interests that are included in a class that is "impaired" by the plan are entitled to vote to accept or to reject the plan.

Section 9.01    Impairment under §1124.

A class of claims or interests is said to be impaired under a plan unless the plan: (1) leaves unaltered the legal, equitable, and contractual rights of the holders in such class; or (2) reinstates the claims pursuant to their original terms and cures any default.

Section 9.02    Classes impaired under the Plan.

Classes 1.1, 1.2, 1.3, 2.1, 2.2, 2.3, 3.1, 3.2, 4, and 54 are impaired under this Plan. Each holder of an allowed claim included in the impaired classes is entitled to vote to accept or reject the Plan. Holders of claims to which an objection is filed prior to the confirmation hearing or that are disallowed shall not be counted for the purposes of confirmation.

Section 9.03    Not voting.

If any holder of a claim that is entitled to vote does not vote, the Plan may be confirmed or not confirmed without considering any votes that were not cast.

**Article 10.    GENERAL PROVISIONS AND DISCLAIMERS.**

Section 10.01    Disclaimers

(a) **No warranties**: While every effort has been made to provide the most accurate information available, Wendt Communication Partners, LLC is unable to warrant or represent that all information is without inaccuracy. Nor can WCP undertake to warrant the absolute accuracy of any assumption regarding the prospective performance of the business as set forth in the financial statements, projections and analyses provided in these materials.

(b) **No Appraisals**. No formal appraisals have been undertaken of WCP's assets. The values placed thereon and used as assumptions hereunder are WCP's best estimate of the liquidation value of its assets as of the date of this Plan.

(c) **Estimated Claims and Financial Projections**. Debtor estimates the value of allowed claims as being equal to the face amount of any claim scheduled either in Debtor's schedules, or in claims filed by the holder thereof. These estimates and the related assumptions respecting related plan payments are made solely for the purpose of allowing Debtor to provide conservative financial projections and assess the feasibility of this Plan. Nothing in this Plan shall be construed as a waiver by the Debtor of its right to object to any claim scheduled In Debtor's petition, provided for in this Plan, or filed as a proof of claim.

(d) **Tax Consequences**. Debtor is not qualified to advise creditors as to the specific tax ramifications of confirmation of the Plan, and therefore makes no representation in this regard. However, Debtor is not aware of any potential material federal tax consequences to creditors that would result from confirmation of the Plan. Each creditor is urged to consult with a tax advisor as to such matters. No material tax consequences to Debtor are anticipated as a result of confirmation of the Plan, or of the entry of an order discharging Debtors as such a discharge, reduction, or forgiveness of indebtedness would be exempt from gross income pursuant to IRC §108.

Section 10.02  Definitions and Rules of Construction.

The definitions and rules of construction set forth in §§101 and 102 of the Code shall apply when terms defined or construed under the Code are used in this Plan. Capitalized terms shall have the meaning assigned to them throughout the narrative of the Plan. The Exhibits attached hereto and referenced throughout are incorporated herein and shall be construed in a manner that is consistent with the terms of this Plan.

Section 10.03  Captions.

The headings contained in this Plan are for convenience of reference only and shall not affect the meaning or interpretation of this Plan.

Section 10.04  Severability.

If any provision in this Plan is determined to be unenforceable or inconsistent with the provisions of the Bankruptcy Code, the determination will in no way limit or affect the enforceability and operative effect of any other provision of this Plan.

Section 10.05  Binding Effect.

The rights and obligations of any entity named or referred to in this Plan as amended or modified, will be binding upon, and will inure to the benefit of the successors or assigns of such entity.

Section 10.06  Controlling Effect.

Unless a rule of law or procedure is supplied by federal law (including the Code or the Federal Rules of Bankruptcy Procedure), the laws of the Commonwealth of Pennsylvania govern this Plan and any agreements, documents, andFsegre instruments executed in connection with this Plan. The

Bankruptcy Court for the Middle District of Pennsylvania shall retain subject matter jurisdiction over any disputes arising under this Plan.

Respectfully submitted,

/s/ *W. Douglas Wendt*
Wendt Communication Partners, LLC
Debtor and Debtor in Possession
By: W. Douglas Wendt
Its: Corporate Representative
Dated: Monday, December 30, 2024January 6, 2025

*/s/. J. Christian Dennery*
J. Christian A. Dennery, Esq. (KBA 98575)
Dennery, PLLC
7310 Turfway Rd, Suite 550
Florence, KY 41042
859-692-3685
jcdennery@dennerypllc.com
Attorney for debtor and debtor in possession
Dated: Monday, December 30, 2024January 6, 2025