**UNITED STATES BANKRUPTCY COURT**
**MIDDLE DISTRICT OF PENNSYLVANIA**
**HARRISBURG DIVISION**

| | |
|---|---|
| In re ) | Case No. 24-02511 |
| Wendt Communication Partners, LLC ) | Chapter 11 – Subchapter V |
| Debtor ) | Small Business Case |
| ) | Hon. Henry W. Van Eck |
| | United State Bankruptcy Judge |

---

**FINDINGS OF FACT, CONCLUSIONS OF LAW, AND ORDER CONFIRMING DEBTOR'S SUBCHAPTER V SMALL BUSINESS PLAN OF REORGANIZATION UNDER CHAPTER 11 OF THE UNITED STATES BANKRUPTCY CODE**

---

This matter came before the Court to consider the confirmation of Debtor's Chapter 11 Subchapter V Plan of Reorganization dated May 6, 2025. [ECF No. 133]. Debtor having been unable to achieve a consensus among the holders of claims classified under the Plan, and Debtor having requested confirmation under § 1191(b); the Court having considered the evidence in the record and the various agreements between the parties; and the Court being otherwise sufficiently advised, hereby finds, concludes and orders as follows:

**FINDINGS OF FACT**

**A. Procedural History.**

1. On October 1, 2024, Debtor filed a voluntary petition for relief under Subchapter V of Chapter 11 of the Bankruptcy Code. Debtor is a debtor in possession pursuant to 11 U.S.C. §§ 1107(a) and 1108.

2. The Debtor's principal location of business is 5000 Ritter Road, Suite 202, Mechanicsburg, PA 17055, and venue in the Middle District of Pennsylvania was proper as of the petition date and continues to be proper under 28 U.S.C. § 1408.

3. On December 30, 2024, Debtor filed a Subchapter V Small Business Plan of Reorganization, pursuant to 11 U.S.C. § 1189 [ECF No. 74].

4. Debtor amended the plan on January 6, 2025, [ECF No 77]; and most recently, on May 6, 2025 [ECF 133].

5. On June 10, 2025, Debtor submitted Summary of the Results of Voting on the Plan [ECF No. 139], which reported that an insufficient number of votes were cast to achieve a consensual confirmation of the Debtor's Plan.

6. A final hearing on confirmation was held on June 17, 2025. The Court granted confirmation under § 1191(b) on the record. [ECF No. 141], with Debtor to file a proposed order within 7 days.

7.  On June 24, 2025, filed the proposed order, a certificate regarding Amended Plan of Reorganization [ECF No. 142], and a final version of its Chapter 11 Subchapter V Plan of Reorganization, which removed all references to a consensual confirmation under 11 U.S.C § 1191(a), and corrected minor typographical errors. [ECF No. 142, the "Plan"].

8.  The Plan is incorporated by reference and affixed hereto as <u>Exhibit A</u>. Unless otherwise stated, capitalized terms shall have the meaning ascribed to them in the Plan.

## B. Voting.

Votes to accept and reject the Plan have been solicited and tabulated fairly, in good faith, and in a manner consistent with the Bankruptcy Code and the Federal Rules of Bankruptcy Procedure. The Summary of the Results of Voting on the Plan [ECF No. 139] shows that the Plan was not accepted and therefore rejected.

## C. <u>Compliance with the Elements of 11 U.S.C. § 1129(a).</u>

### (1) Compliance of the Plan with Applicable Provisions of the Bankruptcy Code (11 U.S.C. § 1129(a)(1)).

The Court has reviewed the Plan and its contents and finds that it complies with all applicable provisions of the Bankruptcy Code as required by 11 U.S.C. § 1129(a)(1), including the applicable elements and requirements of 11 U.S.C. §§ 1122 and 1123.

### (2) The Debtor Complies with Applicable Provisions of the Bankruptcy Code (11 U.S.C. § 1129(a)(2)).

The record reflects that the Debtor solicited acceptances of the Plan in good faith and in accordance with the requirements of 11 U.S.C. § 1125 and Bankruptcy Rule 3017. The ballots were solicited and tabulated in a fair and proper manner and in accordance with Bankruptcy Rules 3017, 3018 and 3019, and 11 U.S.C. § 1126(b). Thus, the Debtor has complied with 11 U.S.C. § 1129(a)(2).

### (3) Proposal of the Plan in Good Faith (11 U.S.C. § 1129(a)(3)).

The record shows that Debtor proposed the Plan in good faith and not by any means forbidden by law, and no party has asserted otherwise. The Plan therefore complies with 11 U.S.C. § 1129(a)(3).

### (4) Bankruptcy Court Approval of Certain Professional Payments as Reasonable (11 U.S.C. § 1129(a)(4)).

Under the Plan, allowed administrative claims shall be paid in full upon the Effective Date of the Plan, or as otherwise agreed to by administrative claimants. The Plan furthermore sets forth a total amount of administrative claims and expenses that Debtor estimates will be incurred over the duration of the Plan, which is to be paid subject to the Court's approval. The Plan furthermore provides that any recoveries realized by the Debtor through compromises or litigation shall be transferred to the Disbursement Agent and preserved for the benefit of the estate. Thus, the Plan complies with 11 U.S.C. § 1129(a)(4).

**(5) Disclosure of Identity and Affiliations of Proposed Management (11 U.S.C. § 1129(a)(5)).**

The Plan identifies the composition of the Debtor's post-confirmation management. Thus, the Plan complies with 11 U.S.C. § 1129(a)(5).

**(6) Approval of Rate Changes (11 U.S.C. § 1129(a)(6))**

The Plan does not involve the establishment of rates controlled by any regulatory commission; therefore, 11 U.S.C. § 1129(a)(6) is not applicable herein.

**(7) Best Interests of Creditors (11 U.S.C. § 1129(a)(7)).**

With respect to each impaired class of claims or interests, the Court finds that the record verifies that each holder of a claim will receive or retain under the Plan on account of such claim property of a value, as of the Effective Date, that is not less than the amount that the holder of the Claim would receive or retain if the Debtor were liquidated on the Effective Date under Chapter 7 of the Bankruptcy Code. Thus, the Plan complies with 11 U.S.C. § 1129(a)(7).

**(8) Acceptance of the Plan by Each Impaired Class (11 U.S.C. § 1129(a)(8)).**

The Plan consists of nine (9) classes of claims that are impaired, two of which voted on the Plan. The two voting classes voted to accept the Plan. Pursuant to 11 U.S.C. § 1191(b), the requirement that each holder of a claim vote to accept a plan of reorganization (U.S.C. §§ 1129(a)(8)) is not applicable under Subchapter V, so long as the plan does not discriminate unfairly, and is fair and equitable, with respect to each class of claims or interests that is impaired under the plan and has not accepted the plan. As discussed below, all classes of claims impaired under the Plan have been treated in accordance with the relevant provisions of the Code.

**(9) Proper Treatment of Claims Entitled to Priority (11 U.S.C. § 1129(a)(9)).**

Pursuant to 11 U.S.C. § 1129(a)(9), the Plan properly provides for the payment of all claims entitled to priority under 11 U.S.C. § 507, including administrative claims, priority claims, and any tax claims, and that the Plan complies with 11 U.S.C. § 1129(a)(9).

**(10)      Acceptance by at Least One Impaired Class. (11 U.S.C. § 1129(a)(10)).**

Pursuant to 11 U.S.C. § 1191(b), the requirement of 11 U.S.C. § 1129(a)(10) that at least one impaired class has voted to accept a plan of reorganization is not applicable under Subchapter V, so long as the plan does not discriminate unfairly, and is fair and equitable, with respect to each class of claims or interests that is impaired under the plan and has not accepted the plan.

(a) The Plan is fair and equitable with respect to holders of general unsecured claims.

As shown in the Projections attached to the Plan as <u>Exhibit 2</u>, the disposable income of debtor that is projected to be received from operating revenues and a portion of the proceeds from the sale of the business will be distributed to holders of allowed general unsecured claims. The Plan provides that holders of general unsecured claims shall recover not less than 15% of the allowed amount of their claims. The Plan furthermore provides appropriate remedies to protect holders of allowed claims in the event that the payments due under the Plan are not made. Thus, the Plan is fair and equitable to the impaired classes as required under 11 U.S.C. §1191(c)(2)(A).

 (b) The Plan meets the requirements of § 1129(b)(2)(A).

A total of 3 classes of secured claims are treated in the Plan. (Class 2.1, 2.2, and 2.3). The Plan provides that the holders of secured claims retain the liens securing such claims, whether the property subject to such liens is retained by the Debtor or transferred to another entity, to the extent of the allowed amount of such claims. The Plan furthermore provides that each holder of a secured claim receives on account of such claim, deferred cash payments totaling the allowed amount of the claims, bearing interest at the rate of 10.5% per annum.

Pursuant to the Stipulation submitted to the Court on April 15, 2025 [ECF No. 124], which is incorporated hereto by reference, Class 2.1 shall have an allowed secured claim in the amount of $68,551.00 in connection with Claim No. 9, which is to be paid in conformity to the parties agreement and therefore in compliance with § 1129(b)(2)(A).

The Plan is fair and equitable all to classes of secured claims and thereby complies with 11 U.S.C. §1191(c)(2)(A).

## (11)   Feasibility of the Plan. 11 U.S.C. § 1129(a)(11).

Based on the record, and the projections included in the Plan as <u>Exhibit 2</u> and <u>Exhibit 3</u>, the Court finds that the Plan complies with 11 U.S.C. § 1129(a)(11).

## (12)   Payment of Bankruptcy Fees (11 U.S.C. § 1129(a)(12)).

Pursuant to 11 U.S.C. § 1930(a)(6)(A), no U.S. Trustee fees are payable in this case. Subchapter V trustee fees are to be paid as of the Effective date of the Plan. The Plan therefore complies with 11 U.S.C. § 1129(a)(12).

## (13)   Retiree Benefits (11 U.S.C. § 1129(a)(13)).

The Debtor is not obligated to provide retiree benefits; therefore, 11 U.S.C. § 1129(a)(13) is not applicable herein.

## (14)   Domestic Support Obligations (11 U.S.C. § 1129(a)(14)).

The Debtor is not required by a judicial or administrative order or by statute to pay domestic support obligations; therefore, 11 U.S.C. § 1129(a)(14) is not applicable herein.

**(15)      Individual Debtors (11 U.S.C. § 1129(a)(15)).**

Pursuant to 11 U.S.C. § 1181(a), 11 U.S.C. § 1129(a)(15) is not applicable herein.

**(16)      Transfers of Property (11 U.S.C. § 1129(a)(16)).**

The Debtor is a limited liability company and any transfers that are to be made pursuant to the Plan shall be made by motion and subject to the approval of the Court.

**D.  Principal Purpose of Plan (11 U.S.C. § 1129(d)).**

The principal purpose of the Plan is not the avoidance of taxes or the avoidance of the application of Section 5 of the Securities Act of 1933. The principal purpose of the Plan is to allow the Debtor to reorganize and continue its normal operations, and to maximize recoveries to all parties in interest in an orderly fashion, while also avoiding disruption and liquidation. Thus, the Court finds that the Plan does not violate 11 U.S.C. § 1129(d).

**E.  Assumption and Rejection of Executory Contracts and Leases.**

Debtor has elected to assume, upon the confirmation of this plan, one executory contract specified in Section 6.7 of the plan, and has rejected all others.

## CONCLUSIONS OF LAW

1. This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157(a) and 1334. This is a core proceeding pursuant to 28 U.S.C. §§ 157(b)(2)(A), (L) and (O). The Debtor was and is qualified to be a debtor under 11 U.S.C. § 109(a). Venue in the Middle District of Pennsylvania was proper as of the Petition Date and continues to be proper under 28 U.S.C. § 1408.

2. As set forth above, the Plan complies in all respects with the applicable requirements of ll U.S.C. § 1129(a), § 1229(b) and § 1191(b), and the Debtor has met its burden of proof for confirmation of the Plan.

3. Pursuant to Article V of the Plan, Lisa Rynard the Subchapter V Trustee, is appointed as the Disbursement Agent for the reorganized debtor.

4. The Stipulation and Agreed Order of Debtor of Stipulation and Agreed Order Resolving Webfund, LLC's Objection to the Debtor's Motion for Use of Cash Collateral, and TD Bank, NA's Objection to Debtor's Amended Plan of Reorganization Dated January 6, 2025 [ECF No. 124], is hereby incorporated hereto as if fully set forth hereunder.

## ORDER OF CONFIRMATION

5. The Plan affixed hereto is incorporated herein and confirmed pursuant to 11 U.S.C. § 1191(b). The Plan and this order shall have the force and effect of a final judgment entered by this Court.

6. The Effective Date of the Plan is as defined in Section 6.04 of the Plan.

7. Pursuant to Article V, Debtor shall make plan payment in an amount equal to any disposable income actually received while it remains in operation, which is anticipated to last not less than twelve (12) months. Debtor, through the Disbursement Agent, shall make periodic payments in accordance with <u>Section 5.05(a)</u>. The Debtor shall also disburse the proceeds from the sale of the business in accordance with the priority schema set out in <u>Section 5.05(b)</u> of the Plan.

8. This Plan provides for the liquidation of all or substantially all of the property of the estate, and the Debtor does not intend to engage in business after the consummation of the sale. Therefore, Debtor is not entitled to a discharge under § 727(a) of the Code, and in turn shall not be entitled to a discharge under § 1141(d)(3) from any debt or claim that arose before confirmation of this Plan.

9. Notwithstanding the entry of this order or the occurrence of the Effective Date, this Court shall retain jurisdiction over this case.

10. Pursuant to the Bankruptcy Rules 2002(f)(7) and 3020(c), the Debtor shall file and serve a notice of the entry of this Order and of the Effective Date of the Plan on all creditors treated in this Plan within seven (7) days of the date of the entry hereof.

Tendered by:

*/s/ J. Christian Dennery*
J. Christian A. Dennery, Esq.
DENNERY, PLLC
7310 Turfway Rd, Ste 550
Florence, KY 41042
(859) 692-3685
jcdennery@dennerypllc.com
Counsel for Debtor and Debtor in Possession

**SO ORDERED,**

## UNITED STATES BANKRUPTCY COURT
## MIDDLE DISTRICT OF KENTUCKY
## HARRISBURG DIVISION

| | | |
|---|---|---|
| In re | ) | Case No. 24-02511 |
| Wendt Communication Partners, LLC | ) | Chapter 11 Subchapter V |
| Debtor | ) | |
| | ) | Hon. Henry W. Van Eck |
| | ) | United States Bankruptcy Judge |

### WENDT COMMUNINCATION PARTNERS, LLC's
### CHAPTER 11 SUBCHAPTER V PLAN OF REORGANIZATION
### Dated: June 24, 2025

Wendt Communication Partners, LLC ("Debtor", "debtor in possession," "the reorganized debtor," "WCP, or the "company"), by and through counsel, and pursuant to 11 U.S.C. §§1189 and 1193, hereby submits its Chapter 11 Subchapter V Plan of Reorganization (the "Plan").

**PLEASE TAKE NOTICE:** Your rights may be affected by the terms and conditions set forth in the Plan. You should read this Plan carefully and discuss it with your attorney. If you do not have an attorney, you may wish to consult one. Electronic copies of the Plan are available upon request or can be accessed from the pacer.gov website.

*/s/ J. Christian A. Dennery*
J. Christian A. Dennery, Esq. (KBA 95878)
Dennery, PLLC
7310 Turfway Rd, Suite 550
Florence, KY 41042
Ph 859-692-3685
Fx 859-286-6726
jcdennery@dennerypllc.com
Attorney for Debtor and Debtor in Possession
Admitted Pro Hac Vice

# TABLE OF CONTENTS

**Article 1. Plan Summary. ......................................................................................... 1**

Section 1.01 Creditor Prospectus and Liquidation Analysis............................... 1

Section 1.02 Wendt Communication Partners, LLC .......................................... 1

Section 1.03 Business History. ........................................................................... 2

Section 1.04 Events Leading to Bankruptcy ...................................................... 3

Section 1.05 Business Assets; and Proposed Sale. ............................................ 3

Section 1.06 Summary of Classification. ........................................................... 4

Section 1.07 Plan Implementation. .................................................................... 4

Section 1.08 Disbursements and Distributions. ................................................. 4

Section 1.09 Requirements of Confirmation. ..................................................... 4

Section 1.10 Voting. ........................................................................................... 4

**Article 2. Claims. ..................................................................................................... 5**

Section 2.01 Allowed Claims. ............................................................................ 5

Section 2.02 Objections to Claims. .................................................................... 5

Section 2.03 Disputed, Contingent, and Unliquidated Claims........................... 5

Section 2.04 Claim Estimates. ........................................................................... 5

Section 2.05 Bar Date. ....................................................................................... 6

**Article 3. Unclassified Claims; Priority Taxes and Administrative Claims. .............. 6**

Section 3.01 Priority Tax Claims. ...................................................................... 6

Section 3.02 Administrative Claims ................................................................... 6

**Article 4. Classified Claims – Classification and Treatment. .................................... 7**

Section 4.01 Class 1 – Administrative Convenience Classes ............................ 7

Section 4.02 Class 2 – Secured Creditor Classes. ............................................. 8

Section 4.03 Class 3 – Merchant Cash Advance Claims. ................................ 10

Section 4.04 General Unsecured Claims........................................................... 11

Section 4.05 Insider Claim. .............................................................................. 11

**Article 5. Plan Disbursements And Distributions .................................................... 12**

Section 5.01 The Disbursement Fund. .............................................................. 12

Section 5.02 Appointment of Disbursement Agent. ......................................... 12

Section 5.03 TD Bank Initial Payment............................................................. 13

Section 5.04 Class 2.1 and 3.2 Deposits; Monthly Deferred Payments........... 13

Section 5.05 Disposable Income, Disbursements, and Distributions................ 13

**Article 6. Implementation....................................................................................... 14**

Section 6.01 Wendt Communication Partners, LLC; Management................... 15

Section 6.02   The Liquidating Plan. ...................................................................... 15

Section 6.03   Plan Projections; Sources and Uses. .......................................... 16

Section 6.04   The Effective Date. ........................................................................ 17

Section 6.05   Plan Duration; Term. ..................................................................... 17

Section 6.06   Vesting of Property of the Estate; Causes of Action. ................. 17

Section 6.07   Assumption and Rejection of Executory Contracts. .................. 18

Section 6.08   Discharge. ........................................................................................ 18

**Article 7.    Feasibility and Liquidation Analysis** ....................................... **18**

Section 7.01   Feasibility. ....................................................................................... 18

Section 7.02   Liquidation. ..................................................................................... 18

**Article 8.    Defaults; Opportunity to Cure; Appropriate Remedies** ............................... **18**

Section 8.01   Default Notice. ................................................................................ 19

Section 8.02   Opportunity to Cure. ..................................................................... 19

Section 8.03   Treatment of Uncured Default of Plan. ....................................... 19

**Article 9.    Voting.** ............................................................................................. **19**

Section 9.01   Impairment under § 1124. ............................................................. 19

Section 9.02   Classes impaired under the Plan. ................................................. 19

Section 9.03   Not voting. ....................................................................................... 19

**Article 10.  General Provisions and Disclaimers.** ....................................... **20**

Section 10.01  Disclaimers. ..................................................................................... 20

Section 10.02  Definitions and Rules of Construction. ....................................... 20

Section 10.03  Stipulation Incorporated. .............................................................. 20

Section 10.04  Captions. .......................................................................................... 21

Section 10.05  Severability. ..................................................................................... 21

Section 10.06  Binding Effect. ................................................................................ 21

Section 10.07  Controlling Effect. ......................................................................... 21

Section 10.08  Notices. ............................................................................................. 21

EXHIBIT 1 – CLAIMS AND CLASSIFICATION; CLASS 3 TREATMENT
EXHIBIT 2 – PLAN PROJECTIONS
EXHIBIT 3 – CASH FLOW PROJECTIONS
EXHIBIT 4 – § 363 SALE AND MINIMUM BID ANALYSIS
EXHIBIT 5 – LIQUIDATION ANALYSIS

**DEBTOR WENDT COMMUNICATION PARTNERS, LLC'S AMENDED CHAPTER 11 SUBCHPATER V PLAN OF REORGANIZATION**

**Dated: June 24, 2025**

**Article 1.**     PLAN SUMMARY.

This document constitutes Debtor's plan of reorganization (the "Plan"), submitted pursuant to §§ 1189, 1191, 1193(a) of Title 11 of the U.S. Bankruptcy Code (the "Code"). Among other things, this Plan describes: (1) the Debtor; (2) the events leading to the bankruptcy filing; and (3) the approach that Debtor proposes to take to reorganize the company's financial affairs and liquidate the company assets to maximize recoveries for creditors. The Plan furthermore: (1) discusses how the Debtor proposes to treat various claims; (2) addresses the factors that the Court must consider to determine whether or not the Plan should be confirmed; (3) assesses the feasibility of the Plan; and (4) compares what holders of allowed general unsecured claims stand to recover under the Plan with what such claimants would receive if the company were to be liquidated under chapter 7 of the Code.

Section 1.01    Creditor Prospectus and Liquidation Analysis.

Subject to all required court approvals, Debtor proposes to sell all or substantially all of the company assets not earlier than twelve (12) months from the Effective Date, (defined in Section 6.04 below), free and clear of any liens and encumbrances. Holders of general unsecured claims shall be entitled to distributions of: (a) the projected disposable income that is actually realized while Debtor continues to operate the business; and (b) proceeds from the sale of the assets after accounting for payments to: (i) holders of administrative claims; (ii) holders of allowed secured claims; and (iii) unclassified priority claims in accordance with Article 4 and Article 5 below. Holders of allowed general unsecured claims are guaranteed to receive 15% of their allowed claims, as scheduled in Debtor's petition or filed as a proof of claim ("Minimum Distributions").

(a) *Confirmation under § 1191(b).* If Debtor is unable to solicit sufficient votes to confirm a consensual plan of reorganization under § 1191(a), Debtor shall request confirmation under § 1191(b).

(b) *Liquidation Analysis.* A liquidation analysis is attached hereto as Exhibit 5 and more fully discussed in Section 7.02 below. After distributions to secured claims, priority tax and administrative claims, holders of allowed general unsecured claims are projected to receive $0.00, if the case were filed or converted to chapter 7.

Section 1.02    Wendt Communication Partners, LLC

Wendt Communication Partners LLC is a privately held Limited Liability Company organized under the laws of the Commonwealth of Pennsylvania. The company's address is located at 5000 Ritter Road, Suite 202, Mechanicsburg, PA 17055. The company continues to operate its business pursuant to §§ 1107 and 1108.

<u>Section 1.03</u>    <u>Business History.</u>

1.      The company was founded by Mr. W. Douglas Wendt and Alice Wendt, his late spouse. The company began servicing customers on January 2, 2007. Over time, the company narrowed its focus to the configuration and implementation of an industry-leading marketing automation and customer relationship management suite, (the "CRM").

2.      Annual revenues grew from about $70,000.00 in 2018 to a peak of $2,979,814 in 2023, because of the company's commitment to becoming certified as a value-added reseller (VAR) operating in the eco-system of a fast growing publicly traded marketing automation and CRM company (the "Vendor.").

3.      Presently, the majority of company revenues are derived from implementing the CRM and training customers in the use of the CRM under project-based or ongoing service contracts. The company also offers content creation and marketing services to existing clients only.

4.      About 35% of total revenues are sourced from commissions paid by the Vendor and clients referred to the company by the Vendor (the "Vendor Referrals"). The remainder of the income is sourced through direct sales to new customers and existing customers, and client referrals.

**WCP Expansion**.

5.      The company expanded its capacity and supported its growth through a variety of financing activities, including revolving credit, business loans, lines of credit, and loans from merchant cash advance companies ("MCAs"). The funds were used strategically to grow the company's visibility, and to support the expansion of the company's capacity to service larger clients.

6.      In many respects, the growth strategy was initiated at the recommendation of the Vendor's leadership team who intimated that the Vendor intended to aggressively pursue larger enterprise level clients. Leadership suggested that VAR partners desiring to contract with such enterprise clients would be required to maintain certain accreditation(s) and adhere to complex IT security and data protocols, all of which required significant investments.

7.      The company was also selected to assist the Vendor in high-level sales presentations to customers that required complex implementations. The collaboration resulted in a high rate of deal closings that benefited both the company and the Vendor.

8.      In anticipation of further and more aggressive growth, the company also retained outside fractional professional services, including a Chief Financial Officer (CFO); a Chief People Officer (CPO); and a fractional Chief Revenue Officer (CRO), each of whom were hired for the years of experience that they purportedly had in the technology industry.

9.      The company also maintained high levels of payroll for the first seven to eight months of 2024 in anticipation of deals that ultimately never materialized.

<u>Section 1.04</u>    <u>Events Leading to Bankruptcy</u>

10.      Starting in early 2024, the close rate on enterprise client deals plummeted dramatically due to overall economic conditions and stiff price competition in the marketplace. Without notice to its VARs, the Vendor shifted its priorities away from enterprise clients to a monthly recurring revenue model that is more suited for smaller implementations (the "MRR Model"). VARs were required to meet certain volume thresholds to benefit from partner referrals from the Vendor.

11.      The company was unable to shift its operations to meet the new MRR Model thresholds. The new model effectively locked the company out of 30 to 40% of its revenue streams. WCP also lost the benefits of being a top-tier VAR in the Vendor's ecosystem. As a result, Vendor Referrals dropped 50% from the prior year. Overall sales declined rapidly, and the company lost its ability to secure larger contracts.

12.      By July 2024, the company began cutting its expenses by laying off full-time employees, reducing the high cost North American contractors, and reducing the company overhead as much as possible.

13.      Presently, Mr. Wendt is the only employee on the company payroll, and the company maintains a compliment of about 21 lower-cost virtual assistants that work out of Mexico, Columbia, South Africa, the Philippines, and India (collectively the "VAs"). VAs take care of all general and administrative tasks, client onboarding, support and account management, and bookkeeping duties. Marketing is outsourced to a third-party lead-generation company.

14.      Sometime in late September, the company was notified that one of its creditors intended to enforce its rights to payment by seizing the company's receivables and the money due on current accounts directly from the company's customers.

15.      The company understood that any attempts at seizing customer accounts would result in irreparable harm to WCP's business reputation, an immediate loss of customers and accounts, and possibly the termination of the contract with the Vendor – any one of which would be fatal for the company.

16.      On October 1, 2024, (the "Petition Date"), WCP filed a petition for relief under chapter 11 with the United States Bankruptcy Court for the Middle District of Pennsylvania.

<u>Section 1.05</u>    <u>Business Assets; and Proposed Sale.</u>

17.      As of the Petition Date, WCP's tangible assets were comprised of operating capital, accounts receivables and miscellaneous furniture and equipment, and various unliquidated causes of action with total estimated value of $221,001.56. [ECF No. 1, p. 14].

18.      WCP believes that its value as a going concern and the relationships and loyalty that it has established with past and current clients are the company's most valuable assets. WCP further believes that the best way of monetizing the value of the company is to stabilize the financial affairs of the company and liquidate the assets.

**Plan Summary**

<u>Section 1.06    Summary of Classification.</u>

This Plan provides for the sale of the company assets not earlier than twelve (12) months from the Effective Date, and distributions to: three administrative convenience classes (Class 1.1; Class 1.2; and Class 1.3); one class of secured creditors (Class 2.1); one Class of claimants that holds claims against the company's Future Receivables (Class 3.2); and one class of general unsecured claims (Class 4), which is comprised of nonpriority general unsecured claims: (a) that were scheduled in Debtor's petition, and/or filed as a proof of claim, and not scheduled as disputed, contingent, or unliquidated in Debtor's schedules; and (b) in an amount equal to the sum of the unsecured portion of any Class 2 Claims. Recipients of this Plan are encouraged to review <u>Article 4</u> below, together with the classification scheme set forth in <u>Exhibit 1</u>, for more information about the treatment of each class under this Plan.

<u>Section 1.07    Plan Implementation.</u>

To implement its Plan, Debtor intends to: (a) retain property of the estate; (b) operate the business for a period of not less than twelve (12) months; and (c) subject to all required court approvals, to sell all or substantially all of the company assets free and clear of any liens not before twelve (12) months from the Effective Date of the Plan. The reorganized debtor intends to finance the cost of the reorganization with post-confirmation income and proceeds from the sale of the company assets. The implementation of the Plan is more fully discussed in <u>Article 6</u> below.

<u>Section 1.08    Disbursements and Distributions.</u>

Except as otherwise provided, funds that are to be disbursed or distributed under this Plan shall be transferred to a Disbursement Fund, which is to be administered by a Disbursement Agent in accordance with <u>Article 5</u> below.

<u>Section 1.09    Requirements of Confirmation.</u>

To be confirmed by the Court, a plan in a case under chapter 11 must, among other things: (a) comply with the provisions of the Code; (b) have been proposed in good faith and not by any means forbidden by law; (c) propose to pay each holder of a claim, who has not accepted the Plan, property that is at least equal in value to what such holder would receive if Debtor's assets were liquidated in a case under chapter 7; (d) propose to pay all administrative claims in full; and (e) propose to pay all priority claims in full with deferred payments or cash. In addition, any agreement to include post-petition credit or to sell securities in connection with the Plan must be approved by the Court. The requirements for confirmation as they relate to this Plan are more fully discussed throughout this Plan.

<u>Section 1.10    Voting.</u>

Each holder of an allowed claim that is impaired under this Plan is entitled to vote to accept or to reject the Plan. After the Plan is filed, the Court will schedule a hearing on confirmation and prescribe the procedures that Debtor must follow to solicit votes. In a subchapter V case, such as the case at bar, confirmation of the Plan can be ordered under § 1191(a), in the case of a consensual

plan, and under § 1191(b) in the case where an insufficient number of ballots have been cast to accept the Plan. The voting procedures and their effect on the confirmation of the Plan are more fully discussed in Article 8 below.

## Article 2.    CLAIMS.

### Section 2.01    Allowed Claims.

Unless an objection to a claim is filed, a claim shall be "allowed" if it is timely filed as a proof of claim and/or listed in Debtor's schedules and not designated as contingent, disputed or unliquidated. An allowed claim is deemed to be allowed in the amount set forth in Debtor's schedules or a related proof of claim. Debtor makes no representations as to the validity or the amount of any claim scheduled or filed, and holders of claims should not presume that Debtor will not object to any claim even where such claims were not scheduled in Debtor's petition as being disputed, unliquidated, or contingent. Any claim allowed after an objection is filed shall be hereinafter referred to as a claim "allowed by a final order."

### Section 2.02    Objections to Claims.

Objections to claims must be filed within thirty days (30) days from the Effective Date (defined in Section 6.04 below) or thirty (30) days after an amended claim is filed, whichever occurs later. With regards to claims filed by governmental units after the confirmation of the Plan, objections to such claims must be filed not later than 30 days after the filing of the governmental claim.

### Section 2.03    Disputed, Contingent, and Unliquidated Claims.

For the purposes of this Plan:

(a) A "*disputed claim*" is a claim that has not been allowed or disallowed by a final order, and as to which: (i) a proof of claim has been filed or deemed filed, and the Debtor or another party in interest has filed an objection; (ii) no proof of claim has been filed, and the Debtor has scheduled such Claim as disputed, contingent, or unliquidated; or (iii) a bona fide dispute exists or has arisen regarding a filed claim.

(b) An "*unliquidated and/or contingent claim*" shall mean a claim that: (i) is not capable of ascertainment by reference to an agreement or by simple computation; or (ii) is based on liability that remains uncertain and contingent on the occurrence of some future event; and (iii) which has not been allowed or disallowed. The Claims classified under Class 3 are contingent. (See Section 4.03).

### Section 2.04    Claim Estimates.

In some cases, Debtor has estimated the value of certain claims that are disputed, unliquidated, and/or contingent. Subject to any required Court approvals, Debtor has estimated the amount of disputed, unliquidated and/or contingent claims for the purposes of developing conservative projections under the plan. Debtor shall have the power and authority to fix the amount of disputed, unliquidated and/or contingent claims on an interim or final basis through a compromise with the

holders thereof. Upon confirmation, this Plan shall be read as incorporating the terms and conditions of any final orders entered in connection with any compromised claims.

Section 2.05   Bar Date.

The deadline for filing claims scheduled as disputed, contingent or unliquidated, or with claims in amounts different from that listed in the Debtor's bankruptcy schedules has been set for December 27, 2024, with governmental units having until March 31, 2024, to file their claims (the "Bar Date"). Any party, with a claim scheduled as disputed, contingent or unliquidated, or with claims in amounts different from that listed in the Debtor's bankruptcy schedules, who fails to timely file and serve a proof of claim shall be barred from participating in the above-captioned chapter 11 case with respect to voting on any proposed plan of reorganization and distribution, or in any other regard. The holders of any unfiled claim shall be bound by the terms of a plan of reorganization confirmed by the Court.

**Article 3.**   UNCLASSIFIED CLAIMS; PRIORITY TAXES AND ADMINISTRATIVE CLAIMS.

Section 3.01   Priority Tax Claims.

Pursuant to § 1123(a)(1), claims for administrative expenses and priority tax claims are not classified ("Unclassified Claims").

(a) *Massachusetts Department of Revenue*. Debtor allegedly owes $9,321.57 to the Massachusetts Department of Revenue – (POC No. 4, the "MA-DOR Claim"), $7,153.17 of which is afforded priority under § 507(a)(8). The Plan proposes to pay 100% of the priority portion of the MA-DOR Claim through monthly payments of $119.22 (calculated as $7,153.17 divided by 60 payments), with a balloon payment of the remaining balance to be made from the proceeds of the sale of the company assets. The $2,168.40 non-priority portion of the claim will be included in Class 4 and treated accordingly. All payments shall be administered by the Disbursement Agent in accordance with Article V below.

Section 3.02   Administrative Claims.

Administrative claims are comprised of the costs or expenses of administering the Debtor's chapter 11 case which, subject to the Court's approval, are allowed under §503 of the Code. Debtor estimates that the administrative claims will amount to: (a) $41,000.00 as of the Effective Date; (b) $35,000.00 over the twelve-month period following the Effective Date; and (c) $10,000.00 by the conclusion of the sale of the company assets. Estimates of administrative claims are accounted for in the 12-Month Cash Flow Projections (Exhibit 3) and The Sale and Minimum Bid Analysis, (Exhibit 4).

Subject to any required court approvals, holders of administrative claims shall be paid directly by the reorganized debtor on the Effective Date in the case of pre-confirmation fees and expenses, and thereafter in the case of post confirmation fees and expenses.

**Article 4. CLASSIFIED CLAIMS – CLASSIFICATION AND TREATMENT.**

This Plan provides for the sale of the company assets not earlier than twelve (12) months from the Effective Date, and distributions to: three administrative convenience classes (Class 1.1; Class 1.2; and Class 1.3); three classes of secured creditors (Class 2.1, Class 2.2, and Class 2.3); two classes of Contingent Claims against Future Receivables (Class 3.1 and 3.2); and one class of general unsecured claims (Class 4), which is comprised of nonpriority general unsecured claims: (a) that were scheduled in Debtor's petition, and/or filed as a proof of claim, and not scheduled as disputed, contingent, or unliquidated in Debtor's schedules; and (b) in an amount equal to the sum of the unsecured portion of any Class 2 and Class 3 Claims.

<u>Section 4.01 Class 1 – Administrative Convenience Classes</u>

The classes grouped under Class 1 consist of general unsecured claims that are reduced to $1,000.00 or less, based on the estimated distributions that the holders thereof would realize under the Plan. ("Class 1 Claims"). Debtor, in its business judgment, estimates that the effort and cost of administering payments to the holders of Class 1 Claims would outweigh any benefit that could be realized by the estate from making deferred payments to holders of Class 1 Claims over the duration of the Plan. Class 1 Claims are classified into three (3) separate classes of claims held by three different creditors. Unless otherwise expressly provided, all Class 1 Claims shall be treated as follows:

(a) *Allowed General Unsecured Claims*. Class 1 Claims shall be allowed in the amounts set forth hereunder. Holders of Class 1 Claims shall be entitled to contest the reduction or the amount of any Class 1 Claim not later than 30 days after the Effective Date.

(b) *Disbursement*. Class 1 shall be paid in full: (i) 60 days after the Effective Date; or (ii) 30 days after any contest about a Class 1 Claim is resolved by a final order of the Court, whichever occurs earlier.

**CLASS 1.1. Capital One –** Class 1.1 consists of the claim in the amount of $2,500.00 scheduled by Debtor as being owed to Capital One Bank NA, which is being reduced to $375.00 for the sake of administrative convenience. Class 1.1 is impaired and shall be entitled to vote to accept or to reject the Plan**.**

**CLASS 1.2. Best Buy –** Class 1.2 consists of the claim in the amount of $2,582.72 scheduled by Debtor as being owed to Best Buy, which is being reduced to $387.41 for the sake of administrative convenience. Class 1.2 is impaired and shall be entitled to vote to accept or to reject the Plan**.**

**CLASS 1.3. City National Bank –** Class 1.3 consists of the claim in the amount of $2,654.00 scheduled by Debtor as being owed to City National Bank, which is being reduced to $398.00 for the sake of administrative convenience. Class 1.3 is impaired and shall be entitled to vote to accept or to reject the Plan.

Section 4.02    Class 2 – Secured Creditor Classes.

The classes of claims grouped under Class 2 are comprised of three (3) secured claims in an aggregate amount of $571,533.93. (Collectively "Class 2 Claims"). Class 2 Claims are the subject of security agreements executed by Debtor, with UCC-1 statements having been filed by the holders thereof. Class 2 Claims are secured by all asset liens that have attached to Debtor's interest in estate property, including Cash Collateral as that term is defined in § 363(a). Debtor intends to retain, use, and sell its assets under the Plan free and clear of the interests of holders of Class 2 Claims. Class 2 Claims are categorized into three (3) groups of claims held by three (3) different secured creditors. (Class 2.1; Class 2.2; and Class 2.3). Except as otherwise expressly provided for in this Section, all Class 2 Claims shall be treated as follows:

(a) *Adequate Protection Payments*. Pursuant to the Final Cash Collateral Order issued by the Court [ECF No. 131 ("Cash Collateral Order")], the, Debtor shall continue to make adequate payments directly to holders of Class 2 Claims through the date of confirmation.

(b) *Cut-off of Class 2 Liens*. Debtor does not sell any inventory and generates 100% of its revenue from services provided to its clients. Except as otherwise provided in the Cash Collateral Order, property acquired by the estate or by the Debtor after the commencement of the case is not subject to the liens of the holders of Class 2 Claims by operation of § 552.

(c) *Treatment of Undersecured Portion of Class 2 Claims*. By operation of § 506(a), and to the extent of the interest and priority that any holder of a Class 2 Claim may have in Debtor's interest in property that secures a Class 2 Claim, any difference between the value of the Debtor's interest in property of the estate and the total amount of the Class 2 Claims shall be allowed as a general unsecured claim and treated under Class 4 in accordance with Section 4.04 below.

(d) *Present Value of Allowed Class 2 Claims.* Except as otherwise provided, the present value of any allowed Class 2 Claim shall be calculated as: (i) the value of the Debtor's interest in the property that secures the claim; LESS (ii) any adequate protection payments actually made on account of such claim through the date of confirmation. Any party wishing to contest the present value of a Class 2 Claim, or the treatment afforded to such claim under this Plan shall be required to do so within 30 days from the Effective Date. Adjustments to the present value of any contested Class 2 Claim shall be finalized 30 days after the Effective Date, or 30 days after the entry of a final order on any related contest, whichever occurs later. Any deferred payments due on account of an adjusted Claim 2 Claim shall be adjusted proportionately.

(e) *Retention of Lien*. Holders of allowed Class 2 Claims shall retain any liens securing their claims as such liens existed on the Petition Date, whether the property subject to such liens is retained by the Reorganized Debtor or transferred to another entity, and to the extent of the allowed amount of the secured claim.

(f) *Reservation of Rights to Sell Collateral*. Subject to § 363(k), Debtor reserves the right to sell any collateral subject to a lien securing a Class 2 Claim, free and clear of such lien

with such lien attaching to the proceeds of any sale or transfer and said proceeds to be distributed according to the interest and the priority of each Class 2 Claim.

(g) *Release of Lien*. Holders of any Class 2 Claim shall promptly release any lien on the property securing the claim upon receiving payment of any amounts due under this Plan.

**CLASS 2.1.    TD Bank, National Association –** Class 2.1 is comprised of the claim filed by TD Bank, National Association (POC No. 9), in the amount of $249,713.85 (the "Class 2.1 Claim"). TD Bank was the first secured creditor to perfect its interest in the property of the Debtor by filing a UCC-1 with the Office of the Pennsylvania Secretary of State on April 27, 2023. Pursuant to the Stipulation and Agreed Order Resolving Webfund, LLC's Objection to the Debtor's Motion for Use of Cash Collateral, and TD Bank, NA's Objection to Debtor's Amended Plan of Reorganization Dated January 6, 2025 [ECF No. 124 (the "Stipulation")], and to the Cash Collateral Order, TD Bank's claim shall be allowed in full; $68,651.00 being allowed as a secured claim (the "TD Secured Claim"); and the difference of $181,162.00 being allowed as a general unsecured claim (the "TD Unsecured Claim").

(a) <u>Adequate Protection Payments</u>. Notwithstanding any other provision in this Plan to the contrary, adequate protection payments made to TD Bank shall be separate from and in addition to the Class 2.1 Claim, representing a fair estimate of the diminution of the value of the cash collateral over the period beginning on the Petition Date through to the Effective Date. Adequate protection payments shall be retained by TD Bank and shall not be credited against the TD Bank Secured Claim or the TD Bank General Unsecured Claim.

(b) <u>Initial Payment</u>. On the Effective Date, TD Bank shall be entitled to a lump sum payment of $50,000.00, which shall be applied against the TD Secured Claim. (the "Initial Payment").

(a) <u>Deferred Payments</u>. Beginning on the 20th day of the first calendar month following the Effective Date, TD Bank shall be entitled to receive twelve (12) monthly principal and interest payments of $1,554.25, calculated against the balance of the TD Secured Claim LESS the Initial Payment, bearing interest at the rate of 10.50% per annum, (the "TD Deferred Payments"). The TD Deferred Payments shall be made by the Disbursement Agent, in accordance with <u>Article 5</u>.

(b) <u>Final Distribution</u>. To the extent that there remains a balance owed on the TD Secured Claim after the Initial Payment and the TD Deferred Payments are made, TD Bank shall be entitled to distributions from the sale proceeds of the company assets after distributions are made to holders of administrative claims but before distributions to any other claims.

(c) <u>Treatment of the TD Bank General Unsecured Claim</u>. The unsecured portion of the Class 2.2 Claim shall be allowed as a general unsecured claim and treated in Class 4 in accordance with <u>Section 4.04</u> below.

(d) <u>Impairment</u>. Class 2.1 is impaired and shall be entitled to vote to accept or to reject the Plan.

**CLASS 2.2.    IDEA 247 INC. DBA IDEA FINANCIAL –** Class 2.2 consists of the secured claim filed by Idea 247 Inc. – (POC No. 8), in the amount of $134,341.38 (the "Class 2.2 Claim"). Idea 247 was the second secured creditor to perfect its interest in the Debtor's property when it filed a UCC-1 with the Office of the Pennsylvania Secretary of State, on April 24, 2024. This Plan assumes that Idea 247's interest is junior to that of Class 2.1, and that no portion of the Class 2.2 Claim is secured by property of the estate. Subject to any later adjustments, and after accounting for adequate protection payments made through the date of confirmation, the present value of the secured portion of the Class 2.2 Claim shall be fixed as $0.00. Idea 247 shall not be entitled to deferred payments as a secured creditor under this Plan. The unsecured portion of the Class 2.2 Claim shall be allowed as a general unsecured claim and treated in Class 4 in accordance with <u>Section 4.04</u> below. Class 2.2 is impaired and shall be entitled to vote to accept or to reject the Plan.

**CLASS 2.3.    ODK CAPITAL –**    Class 2.3 consists of the secured claim filed by ODK Capital, LLC (POC No. 6) in the amount of $187,478.70 (the "Class 2.3 Claim"). ODK Capital was the third secured creditor to perfect its interest in the Debtor's property when it filed a UCC-1 with the Office of the Secretary of State of Pennsylvania on July 1, 2024. This Plan assumes that ODK Capital's interest is junior to that of Class 2.1 and Class 2.2, and that no portion of the Class 2.3 Claim is secured by property of the estate. The present value of the secured portion of the Class 2.3 Claim shall be fixed as $0.00. ODK Capital, LLC shall not be entitled to any deferred payments as a secured creditor. The unsecured portion of the Class 2.3 Claim shall be allowed as a general unsecured claim and treated in Class 4 in accordance with <u>Section 4.04</u> below.  Class 2.3 is impaired and shall be entitled to vote to accept or to reject the Plan.

<u>Section 4.03</u>    <u>Class 3 – Merchant Cash Advance Claims.</u>

The classes of claims grouped under Class 3 are comprised of claims held by merchant cash advance companies ("MCA Companies") who purchased an interest in the company's future receivables before the Petition Date. The Claims classified under Class 3 are categorized into two (2) classes of claims held by two (2) different MCA Companies. (Class 3.1; and Class 3.2; collectively the "Class 3 Claims"). Pursuant to the Stipulation, Class 3 Claims shall be treated as follows:

**CLASS 3.1.    Bizfunder NY, LLC ("BizFunder").** Class 3.1 consists of the claim filed by Bizfunder NY, LLC (POC No. 15), in the amount of $87,659.05 (the "Class 3.1 Claim"). On the Effective Date, Byzfunder's security interest in the company's future receivables shall be fixed as $0.00. On the date of the entry of the Sale Order, any security interest held by Byzfunder in the future receivables shall be terminated as if it had never attached to the company's future receivables. The Class 3.1 Claim shall be allowed in full as a general unsecured claim and treated in Class 4 in accordance with <u>Section 4.04</u> below. Class 3.1 is impaired and entitled to vote to accept or to reject the Plan.

**CLASS 3.2.   WebFund, LLC.** Class 3.2 consists of the claim filed by WebFund, LLC, (POC No. 14; the "Class 3.2 Claim"). By agreement of the parties, Webfund shall have an allowed claim of $127,799.98, 100% of which shall be paid through the Plan. Webfund shall be entitled to payments of $4,488.73 for each month beginning on the Effective Date through the entry of the Sale Order, which shall not occur before the 12th month after the Effective Date. Webfund shall be entitled to the proceeds from the sale of the company assets in an amount equal to the difference between the Class 3.2 Claim and the monthly payments made through the date of the final order authorizing the sale of the company assets, (the "Sale Order"). Distributions of sale proceeds to Webfund shall be paid after administrative expenses, and after any distributions due to TD Bank on account of the TD Bank Secured Claim, but prior to any priority claims. All payments and distributions shall be made in accordance with Article 5 below. Webfund shall promptly release any lien on the property securing the Class 3.2 Claim upon receiving payment for the amounts due under this Plan**.** Class 3.2 is impaired and entitled to vote to accept or to reject the Plan.

Section 4.04    General Unsecured Claims.

Class 4 is comprised of nonpriority general unsecured claims: (a) that were scheduled in Debtor's petition, and/or filed as a proof of claim, and not scheduled as disputed, contingent, or unliquidated in Debtor's schedules; and (b) in an amount equal to the unsecured portion of any Class 2 and 3 Claims (Collectively "Class 4 Claims").

(a) *Allowed General Unsecured Claims*. Without waiving any rights to object to any Class 4 Claim, and for the purpose of developing conservative projections, Debtor assumes that $1,615,848.66 in Class 4 Claims shall be allowable pursuant to § 502(a) of the Code, if not objected to as set forth in Section 2.02 above.

(b) *Treatment and Minimum Distributions.* Holders of allowed Class 4 Claims shall be entitled to receive not less than 15% of their allowed claims ("Minimum Distributions"), in the form of: (i) quarterly prorata distributions of Debtor's disposable income (defined in Section 5.05 below), and (ii) prorata distributions of the proceeds from the sale of the business ("Sale Proceeds"), which shall not occur before the 12th month of the Plan. Distributions of Sale Proceeds shall be made in the order of priority set forth in Section 5.05(b) below). All payments and distributions shall be made in accordance with Article 5 below.

(c) *Impairment*. Class 4 is impaired, and holders of an allowed Class 4 Claim are entitled to vote to accept or to reject the Plan.

Section 4.05    Insider Claim.

Douglas Wendt owns a 100% interest in WCP and is deemed an "insider" as that term is defined in § 101(31) of the Code. Mr. Wendt shall not be entitled to any distributions under this Plan until after all allowed claims that are treated under this Plan are paid in full. Any vote cast by Mr. Wendt shall not be counted toward the acceptance of the Plan.

**Article 5.**     PLAN DISBURSEMENTS AND DISTRIBUTIONS

Section 5.01    The Disbursement Fund.

As part of the implementation of the Plan, Debtor in possession has elected to establish a disbursement fund, in a separate debtor in possession deposit account, into which any amounts due under the Plan shall be deposited and administered. (the "Disbursement Fund").

Section 5.02    Appointment of Disbursement Agent.

Upon confirmation, Lisa A. Rynard, the Subchapter V Trustee,, shall be appointed as the Disbursement Agent. The Disbursement Agent shall be charged with the management of the Disbursement Fund in accordance with this Article, with any requirements for a fidelity bond being waived.

(a) *Duties of the Disbursement Agent.* The Disbursement Agent shall administer funds to be deposited into the Disbursement Fund and the distributions that are due in accordance with the terms of this Plan and any related orders. All funds coming into the Disbursement Fund shall be held in a separate bank account used solely for that purpose. The Disbursement Agent shall be responsible for preparing a final accounting of all distributions made in this case.

(b) *Monitoring.* The reorganized debtor, the U.S. Trustee and any creditor with an allowed claim may monitor the Disbursement Fund and the distributions made by the Disbursement Agent, and the Disbursement Fees (defined below). Upon request, the Disbursement Agent shall make available to the reorganized debtor, the U.S. Trustee and/or any creditor with an allowed claim, all receipts, books, account statements, reports, or records related to the Disbursement Fund and the Disbursement Fees within a reasonable time after receiving a request for such information.

(c) *Compensation and Reimbursement of Disbursement Agent.* The Disbursement Agent shall be compensated on an hourly basis or in an amount equal to 5% of the amounts deposited into the Disbursement Fund, whichever is less, PLUS the necessary and actual out-of-pocket expenses incurred in connection with the administration of the Disbursement Fund, including but not limited to wire transfer fees, electronic payment fees, and/or printing and postage costs, ("Disbursement Fees"). Compensation to the Disbursement Agent and the reimbursement of Disbursement Fees shall have priority over any other disbursements, distributions or payments to be made under the Plan from the Disbursement Fund.

(d) *Removal or Resignation of Disbursement Agent.* The reorganized debtor, any creditor with an allowed claim, the U.S. Trustee, or any party in interest shall be entitled, after notice and a hearing, to remove and replace the Disbursement Agent for cause. After notice and a hearing, the Disbursement Agent may withdraw. Any successor shall be appointed by the Court.

Section 5.03    TD Bank Initial Payment.

Within 10 days after the confirmation of the Plan, the reorganized debtor shall transfer to the Disbursement Fund, the $50,000.00 Initial Payment due to TD Bank under CLASS 2.1(b) above. The Disbursement Agent shall take all measures to ensure that the Initial Payment is received by TD Bank not later than the Effective Date.

Section 5.04    Class 2.1 and 3.2 Deposits; Monthly Deferred Payments.

Beginning on the 10th day of the first calendar month following the Effective Date, and each month thereafter until the entry of the Sale Order, Debtor shall deposit into the Disbursement Fund the deferred payments due to TD Bank, NA, as provided in CLASS 2.1 above, and to Webfund LLC, as provided in CLASS 3.2 above, plus any related Disbursement Fees. The Disbursement Agent shall review and produce a check register and/or prepare checks and ensure that payments are transmitted directly to TD Bank and Webfund so that each receives the payments due to them by the 20th day of each calendar month following the Effective Date through the date of the entry of the Sale Order.

Section 5.05    Disposable Income, Disbursements, and Distributions.

For the purposes of this Plan, the term "Disposable Income" shall mean income that is actually received by the reorganized debtor, which is not reasonably necessary to be expended for the payment of expenditures necessary for the continuation, preservation and operation of the business of the debtor, after accounting for: (1) client deposits held on account of unperformed work; (2) Disbursement Fees; (3) allowed administrative claims and expense reimbursements entitled to administrative priority pursuant to §503(b) and/or §507(a); and (4) any payments or distributions due to holders of allowed Class 1, Class 2, and Class 3 Claims.

(a) *Deposits, Disbursements, and Distributions of Disposable Income; Class 4 Fund.* Beginning on the 10th day of the first month following the Effective Date, the reorganized debtor shall make monthly deposits into the Disbursement Fund of any Disposable Income realized since the confirmation of the plan. (the "Class 4 Fund").

(i) Initial Disbursement; Class 4 Fund. On or before the 20th day of the first calendar quarter following the Effective Date, the Disbursement Agent shall disburse the corpus of Class 4 Fund, *prorata* on a claim basis, to holders of any allowed Class 4 Claims. (The "Initial Class 4 Disbursement").

(ii) Quarterly Distributions; Class 4. On the 20th day of the first month of the quarter following the Initial Class 4 Disbursement, the Disbursement Agent shall distribute any Disposable Income on deposit in the Disbursement Fund to holders of Class 4 Claims allowed pursuant to § 502(a), pro rata on an allowed claim basis, until the earlier of: (A) the date on which the last Class 4 Claim that is disputed, contingent and/or unliquidated is allowed or disallowed by a final order of the Court; or (B) the entry of the Sale Order. ("Quarterly Distributions").

(iii) Catch up Distributions. Beginning on the 20th day following the date on which the last Class 4 Claim that is allowed or disallowed by a final order of the Court, all Quarterly Distributions shall cease temporarily, and 100% of the Disposable Income

shall be distributed, on a quarterly basis, to holders of Class 4 Claims that were allowed by a final order of the Court, prorata on a claim basis, until such holders realize a recovery equal to the sum of: (1) the Initial Class 4 Disbursement; and (2) the Quarterly Distributions that such holders would have realized to date had their claims been allowed as a Class 4 Claim on or before the Effective Date.

(iv) <u>Forfeiture; Unclaimed Distributions</u>. All unclaimed distributions shall revert to the estate after forty-five days of issuance by the Disbursement Agent and shall be forfeited as to the affected creditor. Any creditor who forfeits a distribution will thereafter be treated as having a disallowed claim.

(b) <u>Distributions of Sale Proceeds</u>. Within a reasonable time after the entry of the Sale Order and the deposit of sale proceeds into the Disbursement Fund, the Disbursement Agent shall make disbursements in the following order of priority:

(i) <u>First</u>, to reimburse and/or defray the costs of the sale of the company assets, including any compensation to any brokers that have been approved by a final order of the Court.

(ii) <u>Second</u>, to holders of any administrative claims in an amount equal to the balance of any administrative expenses and fees allowed by a final order of the Court;

(iii) <u>Third</u>, to TD Bank, NA on account of any balance remaining on the TD Secured Claim as provided under <u>CLASS 2.1</u> above;

(iv) <u>Fourth</u>, to Webfund LLC on account of any balance remaining on its allowed claim as provided under <u>CLASS 3.2</u> above;

(v) <u>Fifth</u>, to holders of allowed claims with priority under § 507(a) to the extent of any balance due thereunder;

(vi) <u>Sixth</u>, as a catch up payment to holders of Class 4 Claims that were allowed by a final order entered after the Effective Date, prorata on a claim basis, until such holders realize a recovery equal to the sum of: (1) the Initial Class 4 Disbursement; and (2) the Quarterly Distributions that such holders would have realized to date had their claims been allowed as a Class 4 Claim on or before the Effective Date.

(vii) <u>Seventh</u>, prorata to holders of all allowed Class 4 Claims, until such holders receive a minimum of 15% of the face value of their allowed claims;

(viii) <u>Eighth</u>, prorata to holders of all allowed Class 4 Claims, until such holders are paid in full.

(ix) <u>Ninth</u>, to W. Douglas Wendt.

## Article 6.    IMPLEMENTATION.

To implement the Plan, Debtor intends to: (a) retain property of the estate and continue its operations until a sale of the company assets is consummated; (b) work with a stalking horse bidder and/or consultants to develop a bid package that can maximize recovery for general unsecured creditors; and (c) conduct and finalize a sale of the company assets pursuant to court approved bidding and sale procedures.

**Section 6.01    Wendt Communication Partners, LLC; Management.**

(a) *Insiders.* W. Douglas Wendt is the 100% owner of the company. Mr. Wendt will continue on as the chief executive officer until the entry of the Sale Order. While the company is operating, Mr. Wendt shall remain accountable for the implementation and for the management and operations of the reorganized debtor in accordance with the Plan.

(b) *Other Staff and Virtual Assistants.* The reorganized debtor intends on retaining, or replacing from time to time, its complement of VAs. Where appropriate, WCP will supplement its existing human resources with additional VAs and/or employees at rates of pay that are commensurate with industry standards.

(c) *Turnaround Professionals.*  WCP recognizes that to prepare for the sale of the company assets, it will require the assistance of a business broker and/or auctioneer to market the business for sale, and consultants to help reorganize the operations of the company in preparation for the sale. ("Turnaround Professionals"). Turnaround professionals shall be employed subject to court approval pursuant to applications submitted under §§ 327(a), 328, 330, and 331, or where applicable under § 363(b). The Plan Projections account for $30,000.00 in fees to turnaround professionals, (Exhibit 3), plus the costs of selling the company assets, which are estimated at 10% of the total prevailing bid. (Exhibit 4).

(d) *Pre-confirmation Retention and Compensation of Professionals.* Debtor shall submit applications to retain any professionals for any services as required by §§ 327(a), 328, 330, and 331 of the Bankruptcy Code. Debtor has accounted for $5,000.00 in accountant fees, (Exhibit 3).

(e) *Retention and Compensation of Disbursement Agent.* Upon confirmation, the Disbursement Agent shall be retained to assist with the implementation of the Plan and the compensation for services without the need for further applications or orders. See Section 5.02(c) above.

**Section 6.02    The Liquidating Plan.**

The Wendt Partners' brand has stood out as a VAR within the Vendor ecosystem because of its focus on marketing and sales, competitive pricing, superior customer service, and its subject matter expertise. The company has struggled, however, to manage and expand its production capacity, given the demands of larger enterprise clients and the competing pressure to increase its monthly recurring revenues from smaller clients. The result is a perennial lag in project completion, which in turn creates a bottleneck in current work and slows customer payments. After accounting for the deep discounts and high rates of repayment due to MCA Companies and the company's other debt obligations, the company's cash flow was unable to sustain the inefficiencies.

Debtor recognizes that it needs to invest significant resources into developing and operationalizing cost-effective production processes. Debtor does not believe that it can do so without partnering with experts and consultants who successfully operate within the Vendor or a similar ecosystem.

Since the filing of the petition, Debtor has discovered that there is a strong appetite by similar-sized consultancies, operating in the same or similar ecosystem, to scale through acquisition.

Debtor has conducted preliminary negotiations with various interested parties. In its business judgment, Debtor believes that it can maximize recovery for its creditors over at least twelve (12) months by selling rather than by investing in a complete restructuring of the company. The successful reorganization and liquidation depend in large part on:

(a) Reducing, and/or reorganizing the company's liabilities to its clients over the twelve (12) months;

(b) Quantifying the going concern value of the company;

(c) Developing bid specifications and sales procedures that ensure that the best and most qualified bidder acquires the company assets for the highest possible bid; and

(d) Marketing the company to potential buyers and selecting a stalking horse bidder that is seeking to scale through the acquisition of a consultancy such as WCP.

Section 6.03    Plan Projections; Sources and Uses.

The Plan will be funded through the reorganized debtor's operating income, recoveries, or awards obtained through litigation or compromises, and the sale of the company assets and its value as a going concern. (Exhibit 3 and Exhibit 4).

(a) *Operating Income.* All distributions to be made under the Plan prior to the sale of the company assets will be funded by operating income. Debtor projects that over 12 months of operations, $529,890.53 will be available to pay most of the administrative fees and expenses, obligations to secured lenders and holders of priority claims, leaving an estimated $150,305.83 in disposable income available for distributions to general unsecured creditors. (Exhibit 3).

(b) *Sale of Assets; Minimum Bid.* Subject to the entry of a final order authorizing a sale under § 363(f), (the "Sale Order"), Debtor intends to liquidate the current assets of the business and sell the remaining goodwill and other intangibles, free and clear of any liens or encumbrances for the benefit of the creditors and the estate.

  (i) *Pre-Sale Payments and Distributions.* The sale shall be finalized not earlier than twelve (12) months from the Effective Date, during which time Debtor shall: (A) make a lump sum payment to holders of allowed Class 1 Claims; and (B) deferred payments to holders of Class 2, and Class 3 Claims. Holders of allowed Class 4 Claims shall be entitled to quarterly distributions of disposable income in accordance with Article V for as long as the company operates.

  (ii) *Minimum Bid.* To ensure that holders of allowed Class 4 Claims receive not less than 15% of the face value of their claim, (as provided in Section 4.04(b) above), Debtor shall establish a minimum bid equal to the positive difference (net of the costs of sale), between: (A) the cash value of the company's current assets; and (B) the balance, if any, of: (1) allowed administrative claims; (2) the TD Bank Class 2.01 Claim, (3) the Webfund Class 3.02 Claim; and (4) any priority claims. (The "Minimum Bid"). The Minimum Bid shall be estimated prior to the final sale, and

Debtor shall reject any bids that offer less than the Minimum Bid. (Exhibit 4 provides the method of calculating the Minimum Bid and the projected distributions to creditors).

(c) *Recoveries*. Recoveries. Debtor expects to recover $10,092.28 from various creditors that are in possession of estate funds, and/or that have effectuated unauthorized post-petition withdrawals from Debtor's deposit accounts, including those parties listed in Section 6.06 below. Debtor continues to investigate whether additional causes of action could be brought against other parties. Any amount recovered shall be preserved for the benefit of the estate as shown in Exhibit 3 and ultimately inure to the benefit of creditors.

(d) *Obtaining Post Petition Credit*. Although this Plan does not contemplate additional debt, nothing in this Plan shall be construed as Debtor's waiver of its right to solicit or obtain credit in the ordinary course of its business, or outside of the ordinary course of business: (i) with priority over any or all administrative expenses of the kind specified in §§ 503(b) or 507(b); (ii) secured by a lien on property of the estate that is not otherwise subject to a lien; or (iii) secured by a junior lien on property of the estate that is subject to a lien.

Section 6.04    The Effective Date.

The Plan shall become effective as of the first day of the first calendar month after the confirmation of the Plan, unless a stay of the confirmation order is in effect on that date, in which case the effective date shall be the first day of the first calendar quarter after the date on which the stay of the confirmation order expires or is otherwise terminated. (Referred throughout as the "Effective Date").

Section 6.05    Plan Duration; Term.

Unless modified after confirmation, the Plan shall last until the entry of the Sale Order. All payments, disbursements, and distributions that are to be made from the proceeds of the sale shall be made within a reasonable time from the entry of the Sale Order. The Plan shall terminate on the date that the last payment due under this Plan is made.

Section 6.06    Vesting of Property of the Estate; Causes of Action.

(a) *Vesting of Property of the Estate – 1191(b)*. Property of the estate, as defined in §541 and §1186(a) shall vest in Debtor on the date that the last payment due under this Plan is made, the conversion of the case to a case under Chapter 7, or dismissal of the case, whichever occurs earlier.

Any recovery resulting from the pursuit of a cause of cation, net of the costs of recovery, shall be preserved for the benefit of the estate in accordance with § 551. Any cause of action not pursued within twelve (12) months from the Effective Date shall be deemed abandoned without further order from the Court.

Section 6.07    Assumption and Rejection of Executory Contracts.

Except as otherwise provided for in this Section or in a final order issued by the Court, the Debtor shall be deemed to have rejected all pre-petition executory contracts and/or unexpired non-residential leases not expressly assumed by way of a motion approved by a final court order. Any parties to a rejected executory contract or an unexpired non-residential lease that has incurred damages as a result of the rejection shall file a proof of a claim for breach damages arising out of the rejection not later than thirty (30) days after the confirmation of the Plan. Upon confirmation, Debtor shall assume the following executory contract(s):

(a) The HubSpot Partner Program Agreement executed between Wendt Communication Partners LLC and HubSpot, Inc. with an effective date of January 31, 2013.

Section 6.08    Discharge.

This Plan provides for the liquidation of all or substantially all of the property of the estate, and the Debtor does not intend to engage in business after the consummation of the sale. Debtor, as a corporation, would not be entitled to a discharge under § 727(a) of the Code. Debtor, therefore, shall not be entitled to a discharge under § 1141(d)(3) from any debt or claim that arose before confirmation of this Plan.

**Article 7.    FEASIBILITY AND LIQUIDATION ANALYSIS**

Section 7.01    Feasibility.

Debtor remains conscious that the occurrence of various operating contingencies could prevent Debtor from implementing the Plan as proposed. Nevertheless, the projections incorporated hereto show that Debtor will be able to make all payments due under the Plan, remain cash flow positive and administratively solvent during the life of the Plan, and that the confirmation of the Plan is not likely to be followed by liquidation under chapter 7 or the need for further financial reorganization. (See Exhibit 3). Given that the income projections are below the average that Debtor is currently realizing (Exhibit 2), and that Debtor projects a minimum bid of $67,665.85, which is below what has been discussed with potential buyers, (Exhibit 4),  the plan is feasible.

Section 7.02    Liquidation.

After accounting for a liquidation discount, the secured lenders, administrative expenses, and the costs of liquidation, Debtor expects that holders of allowed general unsecured claims treated under Class 4 would not retain property or receive any distributions of a value that is less than if Debtor was liquidated under a chapter 7 (Exhibit 5).

**Article 8.    DEFAULTS; OPPORTUNITY TO CURE; APPROPRIATE REMEDIES**

Regardless of whether the Plan is confirmed under  §   1191(a) or §1191(b), the following procedures shall be followed in the event of a default under this Plan:

Section 8.01    Default Notice.

Subject to any orders entered in this case, any party in interest aggrieved by a material default under the provisions of this Plan, may provide written notice to the reorganized debtor and to the Subchapter V Trustee (a "Default Notice"). The Default Notice must describe with specificity the nature of the default alleged and the steps required to cure such default.

Section 8.02    Opportunity to Cure.

The reorganized debtor shall have thirty (30) days after receiving a written Default Notice to cure such default. The aggrieved Claimant or party in interest shall take no further action until at least thirty (30) days have passed and the reorganized debtor has not cured or substantially complied with the Default Notice. Even after the thirty-day period has expired, the reorganized debtor may cure a default at any time, even after an application or motion has been filed by an aggrieved party.

Section 8.03    Treatment of Uncured Default of Plan.

If the reorganized debtor defaults in its obligations under the Plan, and after the required notice and opportunity to cure, the default remains uncured, the aggrieved party may bring the matter before the Court, and the Court may thereafter order the reorganized debtor to liquidate any available assets and disburse the proceeds as appropriate to pay the obligations under the Plan or provide such other relief in the Court's discretion.

**Article 9.    VOTING.**

A chapter 11 debtor must solicit and obtain votes accepting the plan before it can be confirmed. Holders of allowed claims or interests that are included in a class that is "impaired" by the plan are entitled to vote to accept or to reject the plan.

Section 9.01    Impairment under § 1124.

A class of claims or interests is said to be impaired under a plan unless the plan: (1) leaves unaltered the legal, equitable, and contractual rights of the holders in such class; or (2) reinstates the claims pursuant to their original terms and cures any default.

Section 9.02    Classes impaired under the Plan.

Classes 1.1, 1.2, 1.3, 2.1, 2.2, 2.3, 3.1, 3.2, and 4 are impaired under this Plan. Each holder of an allowed claim included in the impaired classes is entitled to vote to accept or reject the Plan. Holders of claims to which an objection is filed prior to the confirmation hearing or that are disallowed shall not be counted for the purposes of confirmation.

Section 9.03    Not voting.

If any holder of a claim that is entitled to vote does not vote, the Plan may be confirmed or not confirmed without considering any votes that were not cast.

**Article 10.**     GENERAL PROVISIONS AND DISCLAIMERS.

Section 10.01    Disclaimers

(a) **No warranties**: While every effort has been made to provide the most accurate information available, Wendt Communication Partners, LLC is unable to warrant or represent that all information is without inaccuracy. Nor can WCP undertake to warrant the absolute accuracy of any assumption regarding the prospective performance of the business as set forth in the financial statements, projections and analyses provided in these materials.

(b) **No Appraisals**. No formal appraisals have been undertaken of WCP's assets. The values placed thereon and used as assumptions hereunder are WCP's best estimate of the liquidation value of its assets as of the date of this Plan.

(c) **Estimated Claims and Financial Projections**. Debtor estimates the value of allowed claims as being equal to the face amount of any claim scheduled either in Debtor's schedules, or in claims filed by the holder thereof. These estimates and the related assumptions respecting related plan payments are made solely for the purpose of allowing Debtor to provide conservative financial projections and assess the feasibility of this Plan. Nothing in this Plan shall be construed as a waiver by the Debtor of its right to object to any claim scheduled In Debtor's petition, provided for in this Plan, or filed as a proof of claim.

(d) **Tax Consequences**. Debtor is not qualified to advise creditors as to the specific tax ramifications of confirmation of the Plan and therefore makes no representation in this regard. However, Debtor is not aware of any potential material federal tax consequences to creditors that would result from confirmation of the Plan. Each creditor is urged to consult with a tax advisor as to such matters. No material tax consequences to Debtor are anticipated as a result of confirmation of the Plan, or of the entry of an order discharging Debtors as such a discharge, reduction, or forgiveness of indebtedness would be exempt from gross income pursuant to IRC § 108.

Section 10.02    Definitions and Rules of Construction.

The definitions and rules of construction set forth in §§ 101 and 102 of the Code shall apply when terms defined or construed under the Code are used in this Plan. Capitalized terms shall have the meaning assigned to them throughout the narrative of the Plan. The Exhibits attached hereto and referenced throughout are incorporated herein and shall be construed in a manner that is consistent with the terms of this Plan.

Section 10.03    Stipulation Incorporated.

The Stipulation and Agreed Order Resolving Webfund, LLC's Objection to the Debtor's Motion for Use of Cash Collateral, and TD Bank, NA's Objection to Debtor's Amended Plan of Reorganization Dated January 6, 2025 [ECF No. 124], is incorporated into this Plan as if it were fully restated herein. The terms of this Plan shall be read as consistent with those of the Stipulation.

If the terms of this Plan conflict with those of the Stipulation, the construction of the terms in the Stipulation shall prevail over any conflicting terms in the Plan.

Section 10.04  Captions.

The headings contained in this Plan are for convenience of reference only and shall not affect the meaning or interpretation of this Plan.

Section 10.05  Severability.

If any provision in this Plan is determined to be unenforceable or inconsistent with the provisions of the Bankruptcy Code, the determination will in no way limit or affect the enforceability and operative effect of any other provision of this Plan.

Section 10.06  Binding Effect.

The rights and obligations of any entity named or referred to in this Plan as amended or modified, will be binding upon, and will inure to the benefit of the successors or assigns of such entity.

Section 10.07  Controlling Effect.

Unless a rule of law or procedure is supplied by federal law (including the Code or the Federal Rules of Bankruptcy Procedure), the laws of the Commonwealth of Pennsylvania govern this Plan and any agreements, documents, and instruments executed in connection with this Plan. The Bankruptcy Court for the Middle District of Pennsylvania shall retain subject matter jurisdiction over any disputes arising under this Plan.

Section 10.08  Notices.

Any notices or correspondence with the Debtor shall be sent to undersigned counsel at the following address:

> Wendt Communication Partners, LLC
> C/O J. Christian A. Dennery, Esq.
> Dennery, PLLC
> 7310 Turfway Rd, Suite 550
> Florence, KY 41042
> jcdennery@dennerypllc.com


> Respectfully submitted,
>
> /s/ W. Douglas Wendt
> Wendt Communication Partners, LLC
> Debtor and Debtor in Possession
> By: W. Douglas Wendt
> Its: Corporate Representative
> Dated: Tuesday, May 6, 2025

21

_/s/. J. Christian Dennery_
J. Christian A. Dennery, Esq. (KBA 98575)
Dennery, PLLC
7310 Turfway Rd, Suite 550
Florence, KY 41042
859-692-3685
jcdennery@dennerypllc.com
Attorney for debtor and debtor in possession

EXHIBIT 1

## CLAIMS - CLASSIFICATION & TREATMENT

| Claimant | POC No. | Classification | Class | Claim Amount | Treatment - (Effective Date) |
|---|---|---|---|---|---|
| Massachusetts Department of Revenue | 4 | Unclassified | | $ 7,153.17 | $ 7,153.17 |
| Capital One | | Gen. Unsecured | 1.1 | $ 2,500.00 | $ 375.00 |
| My Best Buy | | Gen. Unsecured | 1.2 | $ 2,582.72 | $ 387.41 |
| City National Bank | N/A | Gen. Unsecured | 1.3 | $ 2,654.00 | $ 398.10 |
| TD Bank, National Association | 9 | Secured - 506 | 2.1 | $ 249,713.00 | $ 68,551.00 |
| IDEA 247 INC. DBA IDEA FINANCIAL | 8 | Secured - 506 | 2.2 | $ 134,341.38 | $ 124,918.38 |
| ODK Capital, LLC | 6 | Secured - 506 | 2.3 | $ 187,478.70 | $ - |
| Bizfunder NY, LLC | 15 | MCA Claims | 3.1 | $ 87,659.05 | $ - |
| Webfund, LLC | 14 | MCA Claims | 3.2 | $ 127,799.98 | $ 127,799.98 |
| Wells Fargo Bank | 3 | Gen. Unsecured | 4 | $ 49,778.40 | $ 49,778.40 |
| Santander Bank, N.A. | 1 | Gen. Unsecured | 4 | $ 95,622.12 | $ 95,622.12 |
| PNC Bank, NA | 2 | Gen. Unsecured | 4 | $ 48,690.40 | $ 48,690.40 |
| Wells Fargo Bank | 5 | Gen. Unsecured | 4 | $ 14,998.84 | $ 14,998.84 |
| M&T Bank | N/A | Gen. Unsecured | 4 | $ - | $ 145,440.30 |
| Keybank NA | 13 | Gen. Unsecured | 4 | $ 95,041.98 | $ 95,041.98 |
| First National Bank of Omaha | N/A | Gen. Unsecured | 4 | $ - | $ 7,841.01 |
| Citizens Bank | N/A | Gen. Unsecured | 4 | $ - | $ 268,384.82 |
| JPMorgan Chase Bank, N.A. | 7 | Gen. Unsecured | 4 | $ 78,764.60 | $ 78,764.60 |
| Cathay Bank | 16 | Gen. Unsecured | 4 | $ 30,952.96 | $ 30,952.96 |
| Barclays JetBlue Card | N/A | Gen. Unsecured | 4 | $ - | $ 22,508.37 |
| Bank of America, NA | N/A | Gen. Unsecured | 4 | $ - | $ 16,937.35 |
| American Express National Bank | 11 | Gen. Unsecured | 4 | $ 36,665.06 | $ 36,665.06 |
| IDEA 247 INC. DBA IDEA FINANCIAL | 8 | Secured | 4 | $ 134,341.38 | $ 124,918.38 |
| TD Bank, National Association | 9 | Gen. Unsecured - 506 | 4 | $ 181,162.00 | $ 181,162.00 |
| Bizfunder NY, LLC | 15 | Gen. Unsecured | 4 | $ 87,659.05 | $ 87,659.05 |
| ODK Capital, LLC | 6 | Gen. Unsecured | 4 | $ 260,190.06 | $ 260,190.06 |
| Internal Revenue Service | 10 | Gen. Unsecured | 4 | $ 18,280.04 | $ 18,280.04 |
| Massachusetts Department of Revenue | 4 | Gen. Unsecured | 4 | $ 2,168.40 | $ 2,168.40 |
| Pinnacle Bank | 12 | Gen.Unsecured | 4 | $ 21,628.52 | $ 21,628.52 |
| Zoom Communications | N/A | Gen. Unsecured | 4 | $ 8,216.00 | $ 8,216.00 |
| | | Unclassified Claims | | $ 7,153.17 | $ 7,153.17 |
| | | Class 1 - Administrative Convenience | | $ 1,160.51 | N/A |
| | | Class 2 - Secured Claims | | $ 571,533.08 | $ 193,469.38 |
| | | Class 3 - MCA Claims | | $ 215,459.03 | $ 127,799.98 |
| | | Class 4 - General Unsecured Creditors | | $ 1,615,848.66 | $ 1,615,848.66 |
| | | Dsitributions of Disposable Income to Class 4 | | | $ 150,305.83 |
| | | Distributions from Proceeds of Sale To Class 4 | | | $ 92,071.47 |
| | | Total Recovery - Class 4 | | | $ 242,377.30 |
| | | Minimum Recovery - Allowed GUCs | | | 15% |

EXHIBIT 2

# 12-MONTH PROJECTIONS

| Line Item | WCP Model (Yearly) | % of Model Rev. | Est. Incr/Decr MoM | Month 1 | Month 2 | Month 3 | Month 4 | Month 5 | Month 6 | Month 7 | Month 8 | Month 9 | Month 10 | Month 11 | Month 12 | Totals | % of Tot. Gross Rev. |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **REVENUES** | | % of Model Sales | Est. Incr/Decr MoM | 94.2% | 95% | 95% | 95% | 96% | 97% | 99% | 101% | 100% | 99% | 98% | 97% | | |
| Total Income | $2,100,000 | 100% | | $164,888 | $166,537 | $166,537 | $166,537 | $168,202 | $169,884 | $173,282 | $176,748 | $174,980 | $173,230 | $171,498 | $169,783 | $2,042,106 | 100% |
| **Costs of Sales** | | | Est. Incr/Decr MoM | 1.0% | 0% | 0.0% | 0.0% | 1.0% | 1.0% | 2.0% | 2.0% | -1.0% | -1.0% | -1.0% | -1.0% | | |
| Commissions on Sales | $ - | 0% | | | | | | | | | | | | | | | |
| Discounts and Refunds | $(68,250) | -5% | | $(5,359) | $(5,412) | $(5,412) | $(5,412) | $(5,467) | $(5,521) | $(5,632) | $(5,744) | $(5,687) | $(5,630) | $(5,574) | $(5,518) | | |
| Total Costs of Sales | $(68,250) | 12.0% | | $(5,359) | $(5,412) | $(5,412) | $(5,412) | $(5,467) | $(5,521) | $(5,632) | $(5,744) | $(5,687) | $(5,630) | $(5,574) | $(5,518) | | 0.0% |
| NET SALES | $2,031,750 | 97% | | $159,529 | $161,124 | $161,124 | $161,124 | $162,736 | $164,363 | $167,650 | $171,003 | $169,293 | $167,600 | $165,924 | $164,265 | $1,975,738 | 97% |
| Total Sales & Marketing | $185,000 | 5% | | $8,244 | $8,327 | $8,327 | $8,327 | $8,410 | $8,494 | $8,664 | $8,837 | $8,749 | $8,662 | $8,575 | $8,489 | $102,105 | 5.0% |
| GROSS PROFIT | $1,926,750 | 97% | 5.0% | $151,285 | $152,798 | $152,798 | $152,798 | $154,326 | $155,869 | $158,986 | $162,166 | $160,544 | $158,939 | $157,349 | $155,776 | $1,873,632 | 91.8% |
| **EXPENSES** | | | | | | | | | | | | | | | | | |
| **Salaries & Wages** | | | Mngmt. Increase/Decrease MoM | 0% | 0% | 0% | 0% | 0% | 0% | 0% | 0% | 0% | 0% | 0% | 0% | | 8.5% |
| Chief Executive & Sales | $100,000 | | | $8,333 | $8,333 | $8,333 | $8,333 | $8,333 | $8,333 | $8,333 | $8,333 | $8,333 | $8,333 | $8,333 | $8,333 | | |
| Health Insurance | $8,400 | | | $333 | $333 | $333 | $333 | $333 | $333 | $333 | $333 | $333 | $333 | $333 | $333 | | |
| 401K Match | $12,600 | | | $12,600 | $12,600 | $12,600 | $12,600 | $12,600 | $12,600 | $12,600 | $12,600 | $12,600 | $12,600 | $12,600 | $12,600 | | |
| Payroll Processing Fees | $3,600 | | | $3,600 | $3,600 | $3,600 | $3,600 | $3,600 | $3,600 | $3,600 | $3,600 | $3,600 | $3,600 | $3,600 | $3,600 | | |
| Payroll Liabilities | $28,392 | | | $1,083 | $1,083 | $1,083 | $1,083 | $1,083 | $1,083 | $1,083 | $1,083 | $1,083 | $1,083 | $1,083 | $1,083 | | |
| Total Payroll Expense | $262,392 | 12.9% | | $25,950 | $25,950 | $25,950 | $25,950 | $25,950 | $25,950 | $25,950 | $25,950 | $25,950 | $25,950 | $25,950 | $25,950 | $311,400 | 15.2% |
| **Direct Operating Expenses** | | | Est. Incr/Decr MoM | 0% | 0% | 0% | 0% | 0% | 0% | 0% | 0% | 0% | 0% | 0% | 0% | | |
| Contract Labor | $78,876 | 3.76% | | $6,193 | $6,193 | $6,193 | $6,193 | $6,193 | $6,193 | $6,193 | $6,193 | $6,193 | $6,193 | $6,193 | $6,193 | | 1.0% |
| Gen & Administrative | | | | | | | | | | | | | | | | | 0.25% |
| Delivery of Services | $650,000 | 30.95% | | $51,037 | $51,037 | $51,037 | $51,037 | $51,037 | $51,037 | $51,037 | $51,037 | $51,037 | $51,037 | $51,037 | $51,037 | | #REF! |
| Service SaaS & Peripherals | | | | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | | 1.13% |
| Digital HQ | $36,000 | 1.71% | | $3,000 | $3,000 | $3,000 | $3,000 | $3,000 | $3,000 | $3,000 | $3,000 | $3,000 | $3,000 | $3,000 | $3,000 | | #REF! |
| IT Security | $18,000 | 0.86% | | $1,500 | $1,500 | $1,500 | $1,500 | $1,500 | $1,500 | $1,500 | $1,500 | $1,500 | $1,500 | $1,500 | $1,500 | | 0.13% |
| Other SaaS | $9,000 | 0.43% | | $750 | $750 | $750 | $750 | $750 | $750 | $750 | $750 | $750 | $750 | $750 | $750 | | 0.34% |
| Total Direct Operating Expense | $791,876 | 37.7% | | $62,480 | $62,480 | $62,480 | $62,480 | $62,480 | $62,480 | $62,480 | $62,480 | $62,480 | $62,480 | $62,480 | $62,480 | $749,759 | 36.7% |
| **General Administrative Expenses** | | | Est. Incr/Decr MoM | 0% | 0% | 0% | 0% | 0% | 0% | 0% | 0% | 0% | 0% | 0% | 0% | | |
| Total General & Admin Expenses | $138,432.32 | 6.6% | | $12,092 | $12,092 | $12,092 | $12,092 | $12,092 | $12,092 | $12,092 | $12,092 | $12,092 | $12,092 | $12,092 | $12,092 | $145,108 | 7.1% |
| Liability for Undelivered Services | $(300,300) | -22.0% | | $(23,579) | $(23,815) | $(23,815) | $(23,815) | $(24,053) | $(24,293) | $(24,779) | $(25,275) | $(25,022) | $(24,772) | $(24,524) | $(24,279) | | |
| Total Expenses | $1,230,050 | 58.6% | | $114,126 | $114,262 | $114,262 | $114,262 | $114,399 | $114,538 | $114,818 | $115,104 | $114,958 | $114,814 | $114,671 | $114,529 | $1,374,742 | 67.3% |
| 10% Expense Variance | $(123,005) | -10.0% | | $(11,413) | $(11,426) | $(11,426) | $(11,426) | $(11,440) | $(11,454) | $(11,482) | $(11,510) | $(11,496) | $(11,481) | $(11,467) | $(11,453) | $(137,474) | -6.7% |
| Net Operating Income | $746,945 | 35.6% | | $39,349.9 | $40,849.1 | $40,849.1 | $40,849.1 | $42,363.3 | $43,885.7 | $46,982.1 | $50,133.2 | $48,526.1 | $46,935.1 | $45,360.0 | $43,800.7 | $529,891 | 25.9% |
| | | | | 23.9% | 24.5% | 24.5% | 24.5% | 25.2% | 25.8% | 27.1% | 28.4% | 27.7% | 27.1% | 26.4% | 25.8% | | |

**EXHIBIT 3**

| | Est. Opening Balance / DIP to Effective Date | QUARTER 1 | QUARTER 2 | QUARTER 3 (12-MONTH CASH FLOW) | QUARTER 4 | 12-Month Totals |
|---|---|---|---|---|---|---|
| **INCOME FROM OPERATIONS** | | | | | | |
| Est. Opening Balance | $ 233,161 | | | | | |
| Net Accumulated Income from Operations | | $ 121,048 | $ 127,105 | $ 145,641 | $ 136,096 | $ 529,890.53 |
| (Less client deposits for services due)* | $ (51,296) | $ (71,209) | $ (72,161) | $ (75,076) | $ (73,575) | |
| Net Accumulated Income from Operations | $ 181,866 | $ 49,840 | $ 54,944 | $ 70,565 | $ 62,521 | $ 237,869.34 |
| Recoveries | | | | | | |
| Other Estate Income | | | | | | |
| Citizens Bank, NA | | | | | | 1,948.55 |
| Wells Fargo, NA | | | | | | 6,292.26 |
| PNC Bank, NA | | | | | | 1,344.22 |
| Santander Bank, NA | | | | | | 507.25 |
| | | | | | | 10,092.28 |
| Other Estate Income — Net Estate Income | $ 181,866 | $ 49,840 | $ 54,944 | $ 70,565 | $ 62,521 | $ 247,961.62 |
| **PRE-CONFIRMATION DISBURSEMENTS** | | | | | | |
| § 363 - Adequate Protection payments | | | | | | |
| IDEA 247 | $ 9,423.00 | | | | | |
| TD Bank | $ 4,712.00 | | | | | |
| Tot. Pre-Confirmation Disbursmnts | $ 14,135 | | | | | |
| **POST-CONFIRMATION DISBURSEMENTS & DISTRIBUTIONS** | | | | | | |
| **503(b) Claims & Administrative Expenses** | | | | | | |
| Sub V Trustee, Lisa Rynard, Esq. (Estimated) | $ 6,000 | | | | | |
| Dennery, PLLC - DIP Fees & Reimb (Est.) | | $ 5,000 | $ 10,000 | $ 10,000 | $ 10,000 | $ 5,000 |
| Accounting Professionals | $ 35,000.00 | $ 10,000 | | | | $ 30,000 |
| Turn Around professionals | | | | | | |
| Total 503(b) Administrative Fees & Expenses | $ 41,000 | $ 20,000 | $ 10,000 | $ 10,000 | $ 10,000 | $ 35,000.00 |
| **§ 507(a)(8) Unclassified Claims** | | | | | | |
| Massachusetts Department of Revenue | | $ 1,788.29 | $ 1,788.29 | $ 1,788.29 | $ 1,788.29 | $ 7,153.17 |
| Total Admin & Priority | $ 35,000 | $ 17,788 | $ 6,788 | $ 1,788 | $ 1,788 | $ 28,153.17 |
| **Class 1 - Administrative Convenience Classes** | | - | - | - | - | - |
| **Class 2 - Secured Classes** | | | | | | |
| TD Bank, National Association | | $ 4,932.18 | $ 4,932.18 | $ 4,932.18 | $ 4,932.18 | $ 69,729 |
| IDEA 247 INC. DBA IDEA FINANCIAL | | | | | | |
| ODK Capital, LLC | $ 50,000.00 | | | | | |
| Total Class 2 Distributions | $ 50,000 | $ 4,932 | $ 4,932 | $ 4,932 | $ 4,932 | $ 69,728.72 |
| **Class 3 - MCA Claims** | | | | | | |
| BizLender NY, LLC | | | | | | |
| Wefund, LLC Claim 3.2 | | | | | | |
| Total Class 3 Distributions | - | $13,466.19 | $13,466.19 | $13,466.19 | $13,466.19 | 53,865 |
| | | $13,466.19 | $13,466.19 | $13,466.19 | $13,466.19 | 53,865 |
| **Class 4 - General Unsecured Creditors** | | | | | | |
| Estimated Disposable Income/Cash Flow | $ 99,135 | 51,340.56 | 29,757.38 | 50,378.37 | 42,334.04 | 173,810.35 |
| Estimated Disbursement Fees | $ (4,957) | 5,134.00 | 2,975.74 | 5,037.84 | 4,233.40 | 17,381.04 |
| Ending Balance on Effective Date | $ 87,688 | 46,206.50 | 25,293.78 | 42,821.61 | 35,983.93 | 150,305.83 |
| Distributions to Class 4 | - | | | | | |
| Total Disbursements & Distributions | | $ 86,187 | $ 25,187 | $ 20,187 | $ 20,187 | 151,746.65 |
| Total Class 4 Allowed Claims | | | | | | 1,615,848.66 |
| Estimated Distributions to Allowed GUCs | | | | | | 9.3% |

**EXHIBIT 4**

**§363(b) SALES AND MINIMUM BID ANALYSIS***

|  |  | Estimated as of Date of Sale Order |
|---|---|---|
| **Current Assets** |  |  |
|   **Deposit Accounts** |  |  |
|   DIP Operating |  | $ 75,000.00 |
|     (Less Client Funds on Deposit) | Estimated at -22% | $ (16,500.00) |
|   **Total Deposits** |  | **$ 58,500.00** |
|  |  |  |
|   **Accounts** |  |  |
|   Accounts Receivables | Estimated | $ 51,000.00 |
|     (Less Doubtful Accounts) | Estimated at: -10% | $ (5,100.00) |
|   **Total Accounts Receivables** |  | **$ 45,900.00** |
|  |  |  |
| **Other Estate Assets** |  |  |
|   **550 Recoveries and 542(a) Turn Over Actions** |  |  |
|   Citizens Bank, NA |  | $ 1,948.55 |
|   Wells Fargo, NA |  | $ 6,292.26 |
|   PNC Bank, NA |  | $ 1,344.22 |
|   Santander Bank, NA |  | $ 507.25 |
|   Other Related Recoveries (Estimated) |  | $ - |
|  | Estate Recoveries (Estimated) | **$ 10,092.28** |
|  | Total Estate Property | **$ 114,492.28** |
| **Administrative Claims & Expenses** |  |  |
|   507(a)(2) - Admin Expenses, incl. 503(b) |  |  |
|     503(b) Subchapter V Trustee (Estimated) |  | $ 6,000.00 |
|     (Less Payments Made) | | $ (6,000.00) |
|     503(b) Dennery, PLLC Pre Sale Fees (Estimated) |  | $ 35,000.00 |
|     (Less Payments Made) | | $ (35,000.00) |
|     503(b) Dennery, PLLC Sales and Transaction Fees (Estimated) |  | $ 10,000.00 |
|     503(b) Accountants (Estimated) |  | $ 5,000.00 |
|     (Less Payments Made) | | $ (5,000.00) |
|     503(b) Turnaround Professionals |  | $ 30,000.00 |
|     (Less Payments Made) | | $ (30,000.00) |
|  | Proceeds to Adminstrative Claims & Expenses | **$ 10,000.00** |
| **Secured Creditor Allowed Claims** |  |  |
|   TD Bank, N.A. |  | $ 68,651.00 |
|  | Less Intial Payment | $ (50,000.00) |
|  | (Less Deferred Payments Made) | $ (18,651.00) |
|   Idea 247, Inc. |  | $ - |
|   ODK Capital, LLC |  | $ - |
|  | Proceeds to Secured Creditors | **$ -** |
| **Class 3 Claims** |  |  |
|   Bizfunder |  | $ - |
|   Webfund, LLC |  | $ 127,799.98 |
|  | (Plus Deferred Payments Made over 12 months) | $ (53,864.76) |
|  | Proceeds to Class 3 Claims | **$ 73,935.22** |
| **Priority Claims** |  |  |
|   Massachussets Department of Revenue |  | $ 7,153.17 |
|  | (Less Deferred payments made over 12 months) | $ (7,153.17) |
|  | Proceeds to Priority Claims | **$ -** |
|  |  |  |
|  | Net Proceeds from Liquidation | **$ 30,557.06** |
| **Minimum Bid Analysis** |  |  |
|  | Minimum Distributions Due To Class 4 | **$ 242,377.30** |
|  | (Less Prior Dist. of Disposable Income) | $ (150,305.83) |
|  | (Less Net proceeds from Liquidation) | $ (30,557.06) |
|  | Amount to Cover 15% Minimum Distributions | **$ 61,514.41** |
|  | Costs of Sales, Est. at: 10% | $ 6,151.44 |
|  | Minimum Bid | **$ 67,665.85** |
| **Distributions** |  |  |
|   Class 4 - General Unsecured Creditors |  | $ 242,377.30 |
|  | Total General Unsecured Claims Treated in Plan | **$ 1,615,848.66** |
|  | Net Pro Rata Distributions | **15.00%** |

* This analysis s is provided solely to illustrate how distributions of proceeds of company assets and an eventual sale would look like after 12 months. The analysis was developed as part of the Plan Projections and reprsents Debtor's best estimate based on Debtor's past performaance, projections, and preliminary discussions with interested buyers. Because the analsysis is forward looking in nature, it should not be construed as a guarantee about when the company will be able to close on a sale, the value of the assets on hand at the time of the sale, or the amount that bidders may be willing to pay to purchase the company assets.

**EXHIBIT 5**

| LIQUIDATION ANALYSIS | | | |
|---|---|---|---|
| | | | **Est. as of Effective Date** |
| **Current Assets** | | | |
| **Deposit Accounts** | | | |
| Funds on Hand | | $ | 100,000.00 |
| (Less Liability for Services Due) | | $ | (22,000.00) |
| **Total Deposits** | | **$** | **78,000.00** |
| **Accounts** | | | |
| Accounts Receivables | | $ | 51,000.00 |
| (Less Doubtful Accounts) | Estimated at: -10% | $ | (5,100.00) |
| **Total Accounts Receivables** | | **$** | **45,900.00** |
| **Other Assets** | | | |
| **550 Recoveries and 542(a) Turn Over Actions** | | | |
| Citizens Bank, NA | | $ | 1,948.55 |
| Wells Fargo, NA | | $ | 6,292.26 |
| PNC Bank, NA | | $ | 1,344.22 |
| Santander Bank, NA | | $ | 507.25 |
| Other Related Recoveries (Estimated) | | $ | - |
| **Estate Recoveries (Estimated)** | | **$** | **10,092.28** |
| **Total Proceeds From Liquidation** | | **$** | **133,992.28** |
| **Distributions Sec. 726** | | | |
| **Priority Distrbutions** | | | |
| Sec. 326 - Chap. 7 Trustee (726(b)) | Est. at: 5% | $ | (6,699.61) |
| Sec. 330 - Trustee Prof. Fees- (726(b)) | Est. at: 15.0% | $ | (20,098.84) |
| **Subtotal of 726(b) fees** | | **$** | **(26,798.46)** |
| **Adminstrative Expenses** | | | |
| 507(a)(2) - Admin Expenses, incl. 503(b) | | | |
| 503(b) Subchapter V Trustee (Estimated) | | $ | (6,000.00) |
| 503(b) Dennery, PLLC Pre Sale Fees (Estimated) | | $ | (35,000.00) |
| **Subtotal of 507(a)(2)** | | **$** | **(41,000.00)** |
| **Total Administrative Expenses** | | **$** | **(67,798.46)** |
| **Distribution Pool** (After Admin Expenses) | | **$** | **66,193.82** |
| **Secured Creditors** | | | |
| TD Bank, N.A. | $ 249,713.85 | $ | 66,193.82 |
| IDEA 247 INC. DBA IDEA FINANCIAL | $ 134,341.38 | $ | - |
| ODK Capital, LLC | $ 187,478.70 | $ | - |
| ASSN COMPANY - BizFunder | $ 63,100.97 | $ | - |
| **Proceeds to Secured Creditors** | | **$** | **66,193.82** |
| **Distribution Pool** (after proceeds to secured creditors) | | **$** | **-** |
| | | | |
| Class 3 - MCA Claims | $ 127,799.98 | $ | - |
| **Distributions Pool After MCA Claims** | | **$** | **-** |
| **Priority Claims** | | | |
| Massachussets Department of Revenue | $ 9,321.57 100% | $ | - |
| **Distibutions to Priority Claimants** | | **$** | **-** |
| **Net Distribution Pool** | | **$** | **-** |
| **General Unsecured Claims** | | | |
| Class 4 - General Unsecured Creditors | | | |
| **Total General Unsecured Claims Treated in Plan** | | **$** | **1,615,848.66** |
| **Net Pro Rata Distributions** | | | **0.00%** |